OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### AND PREROGATIVE COURT,

#### MARCH TERM, 1889.

———————

ELEANOR H. SANDFORD, appellant,

*v.*

JOHN L. BLAKE, administrator &c. and others, respondents.

1. The intervention of a power of appointment, general or special, whether the estate be real or personal, will not prevent the vesting of an estate given in default of the exercise of the power; if apart from the existence of the power, the estate would be a vested estate. In such cases, the estate will vest subject to be divested by the exercise of the power.

2. But as a matter of construction, the terms in which the limitation over *is* expressed may determine the quality of the estate, although it be limited over in default of the exercise of a power, especially with respect to the time when the estate shall vest in possession or enjoyment.

3. A presumption arises in favor of the residuary legatee against every one except the particular legatee; for the testator is supposed to have given his personalty away from the former only for the sake of the latter.

247

4. The testator, whose estate consisted entirely of personalty, gave to his executors the sum of $12,000, in trust, to invest and collect the interest and income, and apply the same as received to the use of his two brothers and the survivor of them during life, and upon the death of the surviving brother, to pay one-half of the principal so held in trust to such persons and in such shares and proportions as his cousin Eleanor should, by her last will, direct and appoint, and if she should die without making such will, then the same should be divided equally among her children. By the residuary clause, the testator gave all the rest, residue and remainder of his estate to his executors, upon trust, to convert the same into money, and invest the proceeds thereof, and collect the interest and income thereof, and apply the same to the use of his said cousin Eleanor for and during her natural life, and upon her death to transfer, deliver and pay over the principal of his estate in that clause mentioned to such person or persons and in such shares and proportions as she should, by a last will and testament, direct and appoint, and in case she should die without making such will, then to divide the same equally between her children. The testator's surviving brother died June 12th, 1883. Eleanor is still living, and has two children living.—*Held*, (1) that the $6,000 limited over on the death of Eleanor fell into the residue on the death of the testator's brother, to remain there until required to answer the limitation over on the death of Eleanor; (2) that the income of the said fund, whilst so in the residue, remained income, and was payable to Eleanor as life-tenant.

On bill for construction of a will. On appeal from a decree advised by *J. D. Bedle, Esq.*, advisory master.

The question at issue arises upon the fifth and sixth clauses of the will of Frederick Swift, deceased, which are in the following words:

"*Fifth.* I give and bequeath to my executors hereinafter named, and the survivor of them, the sum of twelve thousand dollars, in trust, to invest the same in safe and profitable investments, and to collect the interest and income thereof and apply one-half of the same, from time to time, as received, to the use of my brother, Charles E. Swift, for and during his natural life, and the other half thereof to the use of my brother, Henry Swift, for and during his natural life; and upon the death of either, to apply the whole of said income to the use of the survivor for and during his natural life; and *upon the death of such surviving brother, one-half of the principal so held in trust shall be paid over to such person or persons and in such shares and proportions as my cousin, Eleanor Sandford, wife of Thomas Sandford, shall, by her last will and testament, direct and appoint; and if she should die without making such will, then the same shall be divided equally among her children;* and the other half of the said principal sum shall be divided equally between Lucretia and Adelaide Sand-

Sandford v. Blake.

ford, children of the aforesaid Thomas H. Sandford, and Susan and Mary, children of John P. Boyde, of Portland, Maine; and if either of these four persons should die before such event, then such sum shall be divided equally among the survivors.

"*Sixth.* I give, devise and bequeath all the rest, residue and remainder of my estate, whatsoever and wheresoever, unto my said executors, and the survivor of them, upon trust, nevertheless, to sell and convert the same into money, and to invest the proceeds thereof in safe and profitable investments and to collect the interest and income thereof and apply the same, from time to time, as received, to the use of my aforesaid cousin, Eleanor Sandford, for and during her natural life, and upon her death, to transfer, deliver and pay over the principal of my estate, in this clause mentioned, to such person or persons and in such shares and proportions as she shall, by a last will and testament, direct and appoint; and in case she should die without making such will, then to divide the same equally between her children, share and share alike."

*Mr. J. O. H. Pitney*, for Eleanor H. Sandford, the appellant.

*Mr. John L. Blake*, for the complainant and respondent.

*Mr. M. Pitney*, for Frederick S. Sandford and Edith D. Strange, respondents.

The opinion of the court was delivered by

DEPUE, J.

The testator died August 29th, 1866. His property, at his death, consisted entirely of personal estate. Henry Swift, the testator's brother, to whom the income of the one-half of the $12,000 mentioned in the fifth clause was to be paid during life, has not been heard of since the testator's death. On the presumption of his death, the court of chancery, by a decree made December 26th, 1876, directed the whole income of the $12,000 to be paid to Charles, as survivor. Charles died on the 12th of June, 1883. Eleanor H. Sandford, to whom was given the power to appoint on the $12,000, and the residuary estate, and also the income of the residuary estate during life, is still living.

By a decree of the court of chancery, made March 18th, 1885, the one-half of the principal sum of $12,000, in which the children of Thomas H. Sandford and of John P. Boyde were

interested, was disposed of. The present suit is between Eleanor H. Sandford and her children, Edith D. Strange and Frederick S. Sandford. The subject-matter in controversy is the income of the $6,000, in which these children are interested from the death of Charles Swift until the death of Eleanor H. Sandford shall. occur.

The power given to Eleanor to appoint is general and unrestricted, except that it shall be exercised by her last will and testament. In case of her death without such appointment, the one-half of the $12,000 is limited over to the children in equal shares. The intervention of a power of appointment, whether the estate be real or personal, and whether the power be merely to distribute or fix shares, or to select and exclude any of the objects of a class, and whether the power be general or special, will not prevent the vesting of an estate given in default of the exercise of the power; if apart from the existence of the power, the estate would be a vested estate. In such cases the estate will vest subject to be divested by the exercise of the power. *2 Sugd. Pow. 200; Smith v. Lord Camelford, 2 Ves. Jr. 698; Fearne on Rem. 226; 1 Prest. Est. 494; Challis Real Prop. 57.* Nevertheless, as a matter of construction, the terms in which the limitation over is expressed may determine the quality of the estate, although the limitation over is in default of the exercise of a power, especially with respect to the time when the estate limited over shall vest in possession or enjoyment. The power of appointment is given to Eleanor, to be exercised by an instrument which can take effect only on her death. The language of the bequest over, "If she (Eleanor) should die without making such will, then the same shall be equally divided among her children," fixes the death of Eleanor as the period at which her children shall be entitled to have their legacy.

The fund put in trust to answer the purposes of the fifth clause of the will is the specific sum of $12,000. The gift over to Eleanor's children is equally specific,—the "one-half of the principal so held in trust." The income being given to Henry and Charles, and the survivor of them during life, and the limitation over of the principal being to take effect on the death of

Eleanor, and, there being no directions for the accumulation of income to increase the *corpus* of the fund, the income accruing between the death of the surviving life-tenant and the death of Eleanor is undisposed of and falls into the residue. *Wyndham* v. *Wyndham, 3 Bro. C. C. 58; Shawe* v. *Cunliffe, 4 Bro. C. C. 153, 155.* A residuary bequest of personal estate carries not only everything not in terms disposed of, but everything that in the event turns out not to be well disposed of. A presumption arises in favor of the residuary legatee against every one except the particular legatee; for a testator is supposed to have given his personalty away from the former only for the sake of the latter. *1 Jarm. Wills 762; Schoul. Wills § 519; Tindall* v. *Tindall, 9 C. E. Gr. 512; Woodward* v. *Dunster, 12 C. E. Gr. 84.* The only contest that can arise is, whether the income so falling into the residue remains income or becomes principal.

In *Crawley* v. *Crawley, 7 Sim. 427,* the testatrix gave to such of her great-nephews, John, Henry, Arthur and Philip, as should live to attain the age of twenty-one years, £2,000 each, and gave the residue of her personal estate to trustees, in trust, as to one moiety for the plaintiff for life, with remainder to his children, and as to the other moiety, in trust, for Sarah Moore Halsey for life, with remainder to her daughters. The question arose, whether, until the four legacies should become payable, the interest of the sums set apart to answer those legacies would belong to the tenant for life of the residue, or would form part of the capital of the residue. Vice-Chancellor Shadwell held, that the interest to accrue on those legacies until the legacies should become payable, formed part of the income of the residue, and was payable to the persons entitled to receive the interest of the residue under the trusts of the will.

In *Morgan* v. *Morgan, 4 De G. & S. 164, S. C., 15 Jur. 319,* the testatrix directed her executors to pay out of her general estate to her sister's two daughters, A. and B., £5,000 each upon their marriage, with all the accumulations of interest thereon from the time of her death. She gave the income of the residue to H., at whose death the principal was to be divided between the grandchildren of the testatrix's father. The testatrix died

in 1825. A. died in 1849, unmarried. H., the life-tenant of the residue, died in 1838. B. was living and unmarried. It was decided that the legacies to A. and B. were contingent; that A.'s legacy lapsed upon her death ; that H., the life-tenant of the residue, was entitled to the accumulations of income on A.'s legacy from the testator's death until the death of the life-tenant; and that in the event of B.'s death unmarried, the personal representatives of the life-tenant would be entitled to the accumulations of income on B.'s legacy for the same period.

In *Fullerton v. Martin, 1 Dr. & Sm. 31, S. C., 6 Jur. (N. S.) 265*, the testator directed that, in case of either of his daughters marrying, the sum of £6,000 should be settled on each, and directed his trustees to set apart £6,000 for each of his daughters so marrying, on trusts, for investment in the trustees' names, and to pay the income unto such daughter for her sole and separate use during her life, and after her decease, upon trust, to pay and divide such funds equally amongst the children of such daughter on their attainment of the age of twenty-one years &c.; and if no child should live to attain a vested interest in the legacy, then it was to fall into the residue. The rest, residue and remainder of his estate he bequeathed to his trustees, to invest and pay the interest or annual income to his son during life, with remainder to the children of his son. The testator died in 1847. One of his daughters married in 1854. A child was born of the marriage in 1857, and the daughter died in 1859. The controversy was with respect to the income of the £6,000 accruing between the daughter's death and the time when her child would attain the age of twenty-one. It was held that the income undisposed of after the wife's death fell into the residue as undisposed-of income, and passed as such to the tenant for life of the residue.

In *Cranley v. Dixon, 23 Beav. 512*, the testator gave a number of life annuities to his servants, payable quarterly from his death. He bequeathed the residue as to two-fourths to his wife absolutely, one-fourth to his sister Sarah for life, with remainder to her children, and the remaining one-fourth to his sister Alice for life, with remainder to her children. By a codicil, he directed

that the payment of the annuities should be postponed until the death of his wife. Sir John Romilly, M. R., decided that the income of the fund set apart to answer the annuities which accrued during the lifetime of the wife, not having been disposed of, fell into the residue as income and not as principal, and was payable as income to the widow and the life-tenants in the proportions designated in the residuary bequest.

*Allhusen* v. *Whittell*, *L. R.* (*4 Eq.*) *295*, is the latest English case on the subject, and is in the same line of decision.

These cases were decided upon bequests where the income-producing fund was designed to pay contingent legacies. In *Fullerton* v. *Martin*, as reported in the *Jurist*, Vice-Chancellor Kindersly said: "As the £6,000 would, in a certain event, itself fall into the residue but as *corpus*, the income of the £6,000 would fall into the residue but as income," implying that the contingent character of the legacy determined the character of the income as it accrued and fell into the residue. In *Cranley* v. *Dixon*, the Master of the Rolls treated the capital that produced the income as so much of the residue, and the income of the fund to be appropriated as "income of residue." In *Allhusen* v. *Whittell*, Vice-Chancellor Wood states the principle on which the rule may be rested, that the "fund is residue until it is wanted."

I think the principle on which the rule rests is, that the fund required to answer legacies payable *in futuro*, as was said by Vice-Chancellor Wood, "is residue until wanted," and, being an income-producing fund, the income, whilst it is residue, is as essentially income of the residue as if derived from funds permanently and unconditionally residue, and that the rule applies as well to legacies vested in interest but payable on the happening of a future event as to legacies purely contingent. There is no appreciable distinction between a fund held for the payment of a legacy at an indeterminate time in the future and a fund held for a legacy that may or may not be payable on a future contingency, with respect to the income arising from it whilst it is being held. In either case the fund is set apart from the bulk

of the estate, and in neither case will it be required to pay the legacy when it should happen to become payable.

This rule is eminently appropriate in this case. The testator gave his entire estate to trustees for investment. The income of the $12,000 was set apart for the benefit of the testator's two brothers and the survivor during life. On the death of the surviving brother the one-half of that principal sum was given immediately to the four children of Thomas H. Sandford and John P. Boyde; the other half of the said principal was put in abeyance until the death of Eleanor, and then given to her children in case of her failure to exercise her power of appointment, the income meanwhile being undisposed of. The income of the residue is given to Eleanor for life, with the same power to appoint the principal and the same limitation over to her children in default of the appointment. The testator converted his whole estate into an income-producing fund until the principal should be divided. He excluded the idea that any income of the $12,000 should accumulate for the benefit of those who might take either under the execution of the power or under the limitations over, by making to them a gift of the principal only. He evinced no intent that income should accumulate to swell the *corpus* of the residue; and in the absence of an intent that income should accumulate, the courts, from considerations of public policy, incline against such accumulations—a principle applicable as well to residuary bequests as to specific legacies, especially where the will contains a gift of income.

If the gift had been of a life-estate to Henry and Charles and the survivor for life, in land instead of money, with a limitation over by way of an executory devise to the children of Eleanor at her death, the lands, on the death of the survivor in the lifetime of Eleanor, would have dropped into the residue, and the rents and profits would have gone to Eleanor as life-tenant, and not into the residue to swell the *corpus* of the residuary estate. Whether the subject of the gift be real or personal estate can make no difference.

The learned master, by whom the decree was advised, held that the income of the $6,000 from the death of Charles until

the death of Eleanor became part of the residue, but that the income as it accrued became principal of the residue; that Eleanor, as life-tenant, was not entitled to the whole of the income of that fund, but only to the income of the residue as the *corpus* of that fund was increased by additions to it from time to time of the income of the $6,000. This result complicates very much the administration of this trust, and reconverts into principal a fund which the testator, by his will, made income.

We think that the $6,000 should be treated as residué until required to answer the limitations over, and that Eleanor is entitled to the income of that fund during her life.

The decree should be reversed, and a decree entered in accordance with this opinion.

*Decree unanimously reversed.*