On June 6th, 1933, John P. Murray, late of the city of Jersey City, county of Hudson, State of New Jersey, died leaving a last will and testament, which was duly probated by the surrogate of Hudson county on June 19th, 1933. Letters testamentary were issued to the complainant Margaret C. Sheridan, and Mary E. Booth, since deceased. The bill of complaint shows that as of September 6th, 1934, the corpus of the estate amounted to $700,000, and in addition thereto the sum of $41,514.36, which constituted surplus and unexpended income. At the time of the filing of the bill herein, the accumulated income from the principal of decedent's estate amounted to approximately $41,064.92.
Under paragraph 8 of the will, the decedent devised all his estate to the complainant in trust for the support and maintenance of his two daughters, May and Helen Murray, and the survivor of them. It is provided that in the event the income from the estate is more than sufficient, or necessary, for the support and maintenance of May and Helen, the trustee is directed to expend so much of the excess as will be necessary for certain payments directed to be made in paragraph 8 of the will. However, these payments are not a part of the issue herein. Helen Murray is thirty-five years of age, and May Murray is thirty-eight years of age. Both are incompetent.
In paragraph 10 of the will, these clauses appear:
"Should any additional construction be ever made where either or both of my daughters may be, I hope that arrangements can be made so that special rooms will be set aside for my daughters, and for that purpose I authorize my Trustee to defray such part of the expense of building as it may deem proper and as may be agreed upon and should the income from my estate be insufficient to meet such expense then to use the principal, because as hereinbefore stated, what estate I am leaving is primarily formy daughters, and only for the unusual circumstances which exist, would be left absolutely by me to them." (Italics mine.)
"Upon the death of my daughters, I direct my Trustee to pay *Page 496 
from any unexpended income or to pay, if necessary, from the principal for the expense of their last illness, also for their funeral expenses, and for the erection of a tombstone corresponding to that now placed over the grave of their mother."
The residuary estate is disposed of by paragraph 16, as follows: One-seventh to the College of Mount Saint Mary, one-seventh equally among St. Ann's Home, St. Peter's College, The Marist Brothers and the Monastery of Poor Clares; two-sevenths to Margaret C. Sheridan and three-sevenths to Mary E. Booth.
The last mentioned paragraph also provides that in the event that Margaret C. Sheridan should not survive the testator's two children, then her share is to be divided, one-half thereof to go to the College of Mount Saint Mary, and the other half to go to those who would take it if the testator at the time of the death of the survivor of his two daughters had died intestate.
The persons in esse who would be the next of kin of the testator if the survivor of his two children were to die at this time, and who are the representatives of testator's next of kin are the children of his deceased sister, Mary E. Booth, who died on March 6th, 1935, to wit: Andrew Booth, Alexander Booth and Murray J. Booth, who are all of age.
The bill states that the will makes no disposition of the surplus income, nor does it give any direction as to the investment thereof. It, inter alia, says: "Complainant is unable to determine what right or interest the said Helen and May Murray have in said surplus income and accumulations nor what right or interest the residuary legatees have therein; the claim on behalf of the said Helen Murray and May Murray being that it was the intention of the testator as expressed in his will to appropriate the said income of said residuary estate to their use and benefit, and if there should be a surplus of income unexpended, that such surplus belongs to them by virtue of the provisions of said will; the claim being made in the alternative on behalf of said Helen and May Murray that if said surplus income is not disposed of by said will then the said John P. Murray died intestate as to the *Page 497 
same and such surplus income and accumulations belongs to them as the next of kin of said John P. Murray, and at any rate, is to be held by the trustee for any expenditures that the care, support, maintenance and comfort of the said Helen Murray and May Murray may require in the future, and also for the payment of their funeral expenses and the erection of a tombstone for them, and on the other hand, the claim on behalf of the residuary legatees being that said unexpended income belongs to them." Also, that "owing to the fact that under the provisions of the said will complainant has a wide discretion as to the application of the moneys to the care and maintenance of May and Helen Murray, it is important that it know at this time what other persons besides Helen and May Murray have any future or contingent interest in these funds."
The will provides in paragraph 2 that certain personal property be sent to Mount Saint Mary's College, North Plainfield, New Jersey, for the use of the testator's daughter, Helen, who, at the time of testator's death, was living at the college, but at the time of his death left the college and is residing at the last residence of the testator, No. 61 Lembeck avenue, Jersey City, New Jersey, with Margaret C. Sheridan and May L. Sheridan, her aunts. It is alleged that Mount Saint Mary's College has refused to accept or receive any of that personal property which is mentioned and described in paragraph 2 of the will.
Jennie L. Murray, wife of the testator, John P. Murray, died November 20th, 1923, leaving a last will and testament which was probated by the surrogate of Hudson county on December 20th, 1923. She devised and bequeathed one-third of her estate to her husband absolutely, and two-thirds of her estate to her husband in trust to apply the income, and also the principal, if necessary, to the care and maintenance of her two children, May and Helen Murray. The will gave John P. Murray power to dispose by will such of the said trust estate as would remain upon the death of the survivor of the said two children, and it also gave him power to appoint one or more to succeed him as trustee of the said trust, and *Page 498 
define their powers and duties. Paragraph 2 of her will treats these subjects as follows:
"I give, devise and bequeath all the rest, residue and remainder of my property to my husband, John P. Murray, in trust, to apply the income and also the principal, if in his discretion advisable or necessary, to the care and maintenance of our two children, May and Helen, and the survivor of them in such proportion, in such manner and at such times as to him may seem right or proper. I give to my husband power to dispose by will of such of the Trust Estate herein created as may remain upon the death of the survivor of our two children. Should he, however, survive our two children, then I give, devise and bequeath to him such part, if any, of the trust estate herein created as may remain at the death of the survivor of our two children."
The third paragraph of Jennie L. Murray's will, in part, reads as follows:
"I give to him power by last will and testament to appoint one or more to succeed him as trustee and/or guardian hereunder should the trust estate not have terminated before his death and I also give him power to define their powers and duties as fully as if he were the sole owner of the trust estate and to dispense with security in his discretion."
He, accordingly, in the fifteenth paragraph of his will, exercised the power given him by his wife to appoint a successor or trustee to succeed himself as trustee under her will, as follows:
"I direct that the Trustee substituted in my place to act under the will of my wife apply the income of the trust estate created under her will and also the principal if needed, in its uncontrolled discretion to the care, support, comfort and maintenance of our two daughters, May and Helen in such proportions as to it may seem proper, provided, however, that each of my said daughters shall be cared for and maintained at least as well as they are being cared for and maintained at the time of my death. All the provisions which I have above set forth with regard to the application of my individual property and the care of my two daughters and the survivor of them shall apply to the use of the income and principal of the trust created by their mother for their benefit.
"Upon the death of the survivor of my two daughters, May and Helen, I direct that the principal of the trust under my wife's will created for their benefit shall be then distributed as though the survivor of said daughters was at the time of her death the absolute owner thereof and had received same from my wife and myself jointly and had died intestate in New Jersey." *Page 499 
The complainant trustee of the residuary estate of Jennie L. Murray, as of June 16th, 1934, which is the day the will of John P. Murray was probated, collected the income on the said trust estate and now has in its possession approximately the sum of $31,000. The corpus of this trust estate amounts to approximately $260,000. It has not applied any of the income to the care and maintenance of the children, Helen and May Murray, as provided in the will of their mother, nor to their care, support, comfort and maintenance as provided in the will of John P. Murray under the power of disposition of said trust given him under Jennie L. Murray's will, because it, as trustee of John P. Murray's residuary estate created by his will, has received from this last named estate more than sufficient income to supply the care, support, comfort and maintenance needed by the said Helen and May Murray. The complainant seeks instructions as to whether it has the right to use only the income of John P. Murray's estate for the care, support, comfort and maintenance of May and Helen Murray, or whether it should use the income of both John P. Murray's and Jennie L. Murray's estates for such purposes proportionately, and if so, in what proportions; or, whether it should use the income of Jennie L. Murray's estate exclusively for those purposes, resorting to the income of John P. Murray's estate only if and when the income of Jennie L. Murray's estate proves insufficient for the purposes.
John P. Murray's will directs that the principal of said trust fund created by the will of Jennie L. Murray, or such portion thereof as may remain after the death of the survivor of May and Helen Murray, should pass upon the death of the survivor of them, under the intestate laws of the State of New Jersey, to the next of kin of such survivor after payment of her funeral expenses, the erection of a suitable monument, and the perpetual care of the family cemetery plot in Jersey City. The devisees who will be entitled to take the remainder interest in the trust fund created by the will of Jennie L. Murray upon the death of the survivor of the children May and Helen Murray, are not the same as those who *Page 500 
will take the remainder interest in the trust fund created in the will of John P. Murray. The bill alleges that these interests are in conflict, declaring that it is to the benefit of those parties who are interested in the trust under the will of John P. Murray, that the trust under the will of Jennie L. Murray pay all or a part of the expense of caring for and maintaining the said May and Helen Murray; while it is for the interest of the parties interested in the trust created by the will of Jennie L. Murray, that the trust created by the will of John P. Murray pay all or part of the expense of caring for and maintaining the said May and Helen Murray.
Neither the will of Jennie L. Murray, nor the will of John P. Murray in which he exercises the power of disposition of the residuary estate of Jennie L. Murray given him by her will, disposes of the surplus income of the said Jennie L. Murray's estate after the payment of all the expenditures directed to be paid for the support, care, comfort and maintenance of the said May and Helen Murray. As before observed, there is now in the hands of the complainant, as trustee of Jennie L. Murray's estate, approximately the sum of $31,000, with the prospect of additional surplus income annually, not required for the purposes stated in the wills. Neither of the wills contain any direction as to the investment of the surplus income. Complainant states that it is unable to determine what rights or interests Helen and May Murray have in said surplus income and accumulations of the estate of Jennie L. Murray, nor what right or interest the persons who may be residuary legatees of said estate under the fifteenth paragraph of the will of John P. Murray have therein. The claim made on behalf of Helen and May Murray being that it was the intention of the testatrix Jennie L. Murray to appropriate all the income of her residuary estate for their use and benefit and that such was the intention of John P. Murray in the fifteenth paragraph of his will, wherein he exercised the power of disposition of the residuary estate of Jennie L. Murray given him under the terms of the will of the said Jennie L. Murray; the claim being made in the alternative on behalf of Helen and May Murray that if said *Page 501 
income is not disposed of by the wills of Jennie L. Murray and John P. Murray, then Jennie L. Murray died intestate as to the same, and that such surplus income belongs to the next of kin, and that it is to be held by complainant as trustee for any expenditure that the care, support, maintenance and comfort of Helen and May Murray may require in the future, and also for the payment of their funeral expenses, a tombstone for them in case these items shall not have been paid for out of the estate of John P. Murray.
John P. Murray has made manifest his intentions in the document executed by him as his last will and testament, where, in paragraph 9 thereof, he says:
"* * * Moreover, such estate as I may leave has beenaccumulated for the care of my said daughters, and I therefore authorize and empower my Trustee to use the principal of the residue whenever necessary for their care, support, comfort and maintenance." (Italics mine.)
Again, he says, in paragraph 17 of his will:
"* * * I emphatically declare that expenditures of income and principal both of my trust estate and that of my wife, are to be made by the Trustee as though our daughters were the sole ownersof such principal and income and therefore I direct that thewelfare, comfort and happiness of my daughters are solely to beconsidered and that the interest of the remainderman shall beignored by my Trustee and by the Court should any question everarise concerning expenditures for my daughters." (Italics mine.)
The testator makes quite clear that the welfare, comfort and happiness of his daughters were his chief and primary concern. He left nothing to the imagination; but in language so expressed that "he who runs may read" said that his entire estate, and that of his deceased wife, was to be used exclusively for the benefit of his two children. His thoughts comprehended his whole estate and, unquestionably, in my opinion, it included all additions — surplus and accumulated income, or otherwise. The mother of these two children, Jennie L. Murray, in the execution of her last will and testament was moved by the same consideration for her children's welfare as those which were so unequivocally expressed by her *Page 502 
husband, John P. Murray, in his will. Throughout her will, as well as the will of her husband, was emphasized the desire, that consideration first and above all, be given by the trustee to the care and maintenance of the two children. Both wills directed that a part, or all of the income, be used on behalf of the two children, and, if necessary, any part of the principal could, and should, be expended for their care. The will of Jennie L. Murray states her desire on this subject in paragraph 2, above quoted.
That paragraph leaves no doubt of her meaning; it gives the trustee full discretion to apply the income and also the principal towards the care and maintenance of the two children. That being so, to direct that the so-called surplus income of her estate should be segregated from the corpus thereof, would be a plain misdirection of her intent; and it would obviously defeat the will of the testatrix. The power of disposition given John P. Murray by his wife, is not limited alone to the corpus of her estate, but it includes, as well, the income arising therefrom. Of course, the powers of the trustee are confined first to the earlier instructions of her will.
In harmony with those directions, John P. Murray, in the fifteenth paragraph of his will, says in part:
"All the provisions which I have above set forth with regard to the application of my individual property and the care of my two daughters and the survivor of them shall apply to the use of the income and principal of the trust created by their mother for their benefit."
I do not think that the situation which the testatrix and the testator had in mind could be more unequivocally expressed than they have stated it in their respective wills. This last cited part of the fifteenth paargraph of John P. Murray's will removes any doubt as to the disposition of the surplus or unexpended income coming from the estate of Jennie L. Murray, and its terms clear up any uncertainty as to the status of any excess of income from the estate of Jennie L. Murray.
In 4 Bogart on the Law of Trust and Trustees, 2349, the principle under discussion is expressed as follows: *Page 503 
"Where a trust is to provide for a life cestui, and the income exceeds the needs of the cestui, or at least is greater than the amount which trustee thinks is necessary to expend grantee for the cestui, then it becomes a question whether the said law intends such balance to be the absolute property of the life cestui, payable to him during the trust, at the discretion of the trustee, or its representative estate, death, or whether the intent was that this surplus should be added to the capital of the trust. The former interpretation is the more general in the cases which have considered the point. (Burt v. Gill,42 Atl. 968; 43 Atl. 177; Yates Estate, 125 Atl. 254; Jones v. Jones,77 Atl. 270) but obviously either is a personally possible intent for settlement to manifest."
In Titsworth v. Titsworth, 107 N.J. Eq. 436,
Vice-Chancellor Church said:
"The testator's idea, as I gather from the will, was an equal division of his estate between his children with directions to the trustees to withhold the principal and distribute only income according to the necessities of the children, with advancements of principal in the discretion of the trustees, and there is no provision for both children or the survivor. This being so, it is necessary to create separate trusts as to the income. The court is asked to define the correct meaning of the word `accrued' * * * the income should be distributed as is the principal in each trust. * * * I think the income so accumulated should be reinvested and become principal at the end of the year."
65 C.J. 855; 39 C.J. 196; Commercial Trust Co. v.Spiegelberg, 117 N.J. Eq. 171; Gluckman v. Roberson, 116 N.J. Eq. 531; First National Bank of Hoboken v. Pels, 116 N.J. Eq. 170; Lewis v. Towar, 45 Atl. Rep. 999; Bye v. Strasbourg,102 N.J. Eq. 300. In Von Fell v. Spirling, 96 N.J. Eq. 20; S.C.,97 N.J. Eq. 527, one of the questions presented for the court's construction was "is the income on retained legacies [which were to be paid by the executors when legatees reach the age of twenty-two years] to be accumulated and held and paid at the arrival of the legatee at the age of twenty-two years, or is such income to be paid to such legatee as it accrues?" In this case specific money legacies, also of the residuary estate, were given by testator to his children. It was held (97 N.J. Eq. 527): *Page 504 
"Such provision for retention of shares and legacies, until the person entitled thereto reaches the age of twenty-two years, when the will by its terms contains no provision or direction for payment of income thereon, as it is earned or accrues, construed to mean that the income shall be accumulated and paid with the principal of the share or legacy at the time such principal becomes payable."
See Fidelity Union Trust Co. v. Dignan, 105 N.J. Eq. 750.
This case arose out of the estate of the late Leslie E. Ward. The trustee prayed for the court's instructions as to the disposition to be made by it of the accumulated income on the granddaughter's one-half share of the estate. It was there held that where a fund is given upon trust to pay it over at a future period, no mention being made of the income, the income is to be accumulated and paid over with the principal, the court saying:
"It is suggested that the accumulated income on Leslie P. Ward's share of the residuary estate impliedly followed the gift over of the principal — to the appointee of the power and to Helen's trust. Gifts of specific shares of a fund embrace previously accrued income only by intendment not by legal implication. Current v. Current, 11 N.J. Eq. 186. The rule that income passes with principal by implication applied to income earned after the gift and before enjoyment, as in Bye v.Strasbourg, supra."
The court advised the trustee:
"That the income accumulated and to be derived from the half share of Leslie P. Ward in the residuary estate, which fell into the trust for Helen Ward Dignan, is not available for allowances to Mrs. Dignan, and is to be kept until the termination of the trust."
Under the principles enunciated by Bogert, and the cases herein cited, I shall direct that the surplus income accumulated from the trust funds of both the mother and father of Helen and May Murray, which is not presently needed for their maintenance, and which in the discretion of the trustee is not needed for their present wants, shall be accumulated and used for their benefit during their lifetime and for the *Page 505 
survivor; and such corpus fund, together with such accumulations thereon, distributed when the trust is terminated. My conclusion finds support in an opinion rendered by Chief-Justice Gummere, speaking for the court of errors and appeals in Bye v. Strasbourg, supra, wherein he, in part, said:
"We concur in the conclusion reached by the learned vice-chancellor. In the case of Sandford v. Blake, 45 N.J. Eq. 247,
where a somewhat similar situation existed, we held that, although there was no specific direction for the accumulation of income to increase the corpus of the fund, such income, when not otherwise disposed of, would fall into the residuary estate and be distributable as a part of the corpus at the termination of the trust among those who were entitled under the will to share in the corpus. In other words, that the fact of the failure of the testator to make any specific disposition thereof would not produce an intestacy. We consider the principle thus declared to be applicable to the situation which the present case discloses. The testator's purpose, as indicated in his will, was that his whole estate should go to the named legatees at the termination of the trust, except that which was to be held by the trustees for the benefit of Mrs. Strasbourg, and that this thirty per cent. should be retained by the executors until the time for distribution of the corpus should arrive, and then distributed with the rest of the corpus among the legatees named by him in his will."
And in Von Fell v. Spirling, supra, Mr. Justice Campbell, speaking for the court of errors and appeals, said:
"The will is silent as to the income on retained shares or legacies, and there is nothing therein from which an intention of the testator can be inferred, that it was his will and intention to distribute income and withhold principal of a share or legacy. In such a situation, we think the reasonable construction must be that the income must be accumulated and paid at the time when the principal of the share or legacy is payable under the terms of the will."
John P. Murray under the will of his wife, Jennie L. Murray, was given the right to dispose of her property by his will. *Page 506 
In the event that he survived his children, the will of his wife provided that the trust fund created therein should go to him absolutely. This provision clearly indicates the intention of Jennie L. Murray to dispose of her entire estate, and presents the undoubted inference that she did not propose to die intestate as to any portion or part thereof, whether principal or interest. I am convinced that such was her intention. That being so, it follows that any surplus income should be held and used for the support and maintenance of the two children; and at the termination of the trust, should go to the husband because the income was an essential part of the trust estate created by her.
The hearing indicated that John P. Murray in his lifetime kept no books of account with respect to the welfare of his two daughters, and the inferences gathered from all the facts and surrounding circumstances in the instant case appear to be that after his wife's death, the two daughters were provided for by him from his own funds, notwithstanding a trust estate had been created by his wife, Jennie. He apparently had adequate means of his own from which to supply the wants of his children, and accordingly used them for their maintenance, and, consequently, found no necessity for resorting to his wife's trust fund. His books of account did not show separate accounts of income and excess surplus of income; nor did they show surplus income transferred into the principal account of said trust fund. Part of the third paragraph of Jennie L. Murray's will reads as follows:
"I direct that his successors do not require any account of his estate but accept as the trust estate such property as by his books of account may be shown to belong to it."
Whatever surplus income exists from both estates is not now distributable; it must be disposed of in accordance with the directions of the respective wills of John P. Murray and Jennie L. Murray — the surplus arising under the will of Jennie L. Murray in accordance with paragraph 15 of the will of John P. Murray; and the surplus income arising under the will of John P. Murray in accordance with the provisions *Page 507 
of paragraph 16 of his will. Pursuant to the maxim that equality is equity, and considering all the circumstances in the instant case, I shall direct that the income received from both estates shall be apportioned and distributed by the trustee proportionately for the comfort and maintenance of the two daughters. Further, conforming to the quoted equitable maxim, all surplus money not necessary for the maintenance of the two Murray girls, will continue to accumulate until the death of the surviving Murray child, when the trust estate mentioned in the mother's will shall be distributed pursuant to the directions of the will of John P. Murray under the power bestowed upon him under the will of Jennie L. Murray, as if the same had been jointly the property of both parents to the surviving daughter's next of kin who would be the distributees entitled to this fund under the intestacy laws of New Jersey; and that the residuary legatees mentioned under the will of John P. Murray will take their share as outlined in his will in paragraph 16 thereof.
The trustee is directed to carry separate accounts of the trust funds; to make each fund bear its proportionate share of the net income for the maintenance of the two daughters, and it shall set aside such share of the surplus as may remain in each trust, and hold separate and distinct in each trust such surplus as a provision to meet an emergency if any should arise, or necessity requires, so that any part, or the whole of the accrued surplus, may be used for their convenience or comfort. In the event that no such situation should arise, then such accrued surplus shall be held by the trustee to be finally distributed among the beneficiaries entitled thereto under the wills of Jennie L. Murray and John P. Murray.
The trustee is instructed that the chattels mentioned in the "second" item of testator's will shall be retained for the use of testator's daughter Helen if it feels such use is desirable, and if it decides to the contrary, then they should be sold and the proceeds realized shall become a part of the corpus of the John P. Murray estate. *Page 508