OLIVE D. STEMPEL, ET AL.
*vs.*
THE MIDDLETOWN TRUST COMPANY, ET AL.

Superior Court      Hartford County      File No. 39584

MEMORANDUM FILED APRIL 29, 1939.

*Robinson, Robinson & Cole,* of Hartford; *Francis P. Rohr-mayer,* of Hartford; *Aaron Nassau,* of Hartford, for the Plaintiffs.

*Carlos Ellis, Jr.,* of Middletown; *Allan K. Smith,* of Hartford, for the Defendants.

CORNELL, J. From certain allegations contained in the complaint and admitted in the answer, as well as from the agreed statement of facts, upon which this cause is submitted, it appears that:

Mary Donovan died within the confines of the Probate District of Middletown on December 11, 1920, leaving a last will and testament executed by her on December 30, 1919. She left surviving her, as her only heirs at law, two daughters, viz., Mary V. Donovan and one of the plaintiffs, Olive D. Stempel. The former is unmarried and has been mentally deficient from birth; is now, and will be, incompetent, so long as she lives. The latter has been married since October 29, 1915, and has two daughters, viz., Wanda Eugenia, now 21 years old, and Audrey Jane, who is still a minor. Wanda has been married since February 6, 1937, to John G. Gager; a son, John Jr., issue of the marriage, is living.

In her will, Mrs. Donovan provided that all of the residue of her estate remaining after the payment of ante-mortem debts, expenses of administration and funeral outlays, together with two bequests totaling the sum of $350, should be paid to the three defendant trustees and directed: "So much of both the income and principal of such trust fund as is necessary in the discretion of [naming two of the trustees] . . . . to provide for the comfortable support of my daughter, Mary V. Donovan during the term of her natural life shall be expended or paid over by my said trustees for said purposes and, further, when and if my sister, Mrs. John Hoar shall have expended all of her own property, said trustees shall use and expend so much of the income and principal of said trust estate as is necessary for her comfortable support during the term of her natural life." She provided, in addition, that: "Upon the death of the last of said Mary V. Donovan and said Mrs. John Hoar to survive, said trustees shall pay over to my daughter, Olive D. Stempel [one of the plaintiffs] all of the income of said trust fund then remaining during the term of her natural life and upon her death, or in event that she predecease either said Mary V. Donovan or said Mrs. John Hoar, then upon the death of the last survivor of them, all of the principal of my estate then remaining shall be divided by said trustees equally among the issue of the body of her, the said Olive D. Stempel who then survive, provided, however, that if no issue

of her body then survive, then all of the principal of said estate then remaining shall be divided among my heirs at law in proportion to their heirship and upon the principal of the said fund being distributed in accordance with the direction of this clause, then said trust shall cease and determine." Mrs. John Hoar deceased before becoming eligible to enjoy the bequest in her favor.

From a decree of the court of probate, admitting and approving the will, plaintiff Olive D. Stempel appealed. At about the same time, she instituted suit against the estate to recover the sum of $3,452.28 in which amount she alleged that Mary Donovan was indebted to her when the latter deceased. On October 30, 1922, the executors and trustees on the one part and plaintiff Olive D. Stempel on the other, entered into a written agreement (Exhibit B), which the complaint characterizes as "in the nature of a family settlement or compromise." By the terms of this, plaintiff, Olive D. Stempel, agreed to withdraw both the appeal which she had taken from the admission of the will to probate and the suit then pending to collect the claim mentioned. In consideration of this, the executors undertook to pay such claim in its full amount and, in addition, commencing on January 1, 1923, and in every calendar year thereafter, until "the death of the last survivor of said Mary V. Donovan and Mrs. John Hoar, or until the death of said Olive D. Stempel whichever of which events shall happen first", a certain share of the income from the trust fund, viz., $600 in each calendar year in which the income, after providing for the comfortable support of Mary V. Donovan plus the expenses of administering the trust, should not be in excess of $2,000 and, in any calendar year in which such surplus income exceed $2,000, then for such year, $1,000. The agreement also provided that: "The remainder of said surplus income, over and above the amount necessary to make the aforesaid payments, shall be added to and become a part of the principal of the estate. . . ."

During the years 1923 to 1926, both inclusive, the income from the trust was not always sufficient to cover the payment of $600 per annum to Olive D. Stempel in accordance with this agreement, but such payments were nevertheless made and resulted in deficits from income totaling $5,231. Thereafter and up to and including the year 1936, the income from the trust increased very substantially so that the sum of $1,000 was paid Olive D. Stempel during each of these years or a

total of about $12,800 for that period. During the same time, after making such payments to Olive D. Stempel and providing for the support of Mary V. Donovan and after deducting the expense of administering the trust there remained an excess of income totaling $54,600.41, out of which $9,314.90 in aggregate annual payments to Olive D. Stempel as guardian of her daughters (the other two plaintiffs), were made in accordance with a certain agreement later herein referred to, for their support, maintenance and education. The balance, on the books of the trustees has been treated as part of the principal of the trust fund, but of it, $16,228.88 has been kept in a special fund.

As noted, at the time that the so-called agreement of compromise (Exhibit B) was made, and for three years thereafter, the income from the trust fund was insufficient to bear the additional demands made upon it by reason of the requirements of such agreement. But commencing with the year 1927, due to a fortuitous sale of real property and apparently excellent management on the part of the trustees, an unforeseen increase in income eventuated, as a result of which between that time and the end of the calendar year, 1927, after providing for the comfortable support of Mary V. Donovan and making the payments to Olive D. Stempel, required by the agreement (Exhibit B), surplus income added to the principal of the trust estate aggregated $17,730, while up to that time plaintiff Olive D. Stempel had received payments under the agreement in question totaling $5,400.

It thus appears that the agreement (Exhibit B) which was a very advantageous one to Olive D. Stempel when it was made, was apparently now viewed by her as disadvantageous. Accordingly, the instant action was brought by her in behalf of herself, individually, and as guardian of the estates of the other plaintiffs, her minor daughters, Wanda Eugenia Stempel and Audrey Jane Stempel. In it, among other relief, a declaratory judgment is sought, (1) "determining and adjudging whether or not the surplus income upon the estate of Mary Donovan constitutes intestate estate and the right and title of the plaintiff, Olive D. Stempel and the defendant, Mary V. Donovan, to such intestate estate"; and (2) a declaration of "the title and rights of the plaintiff Olive D. Stempel and the defendant Mary V. Donovan to the surplus income by virtue of the will." With this, apparently as consequential relief— based upon a claim of mutual mistake of law—is conjoined a

prayer that the so-called compromise agreement (Exhibit B) be reformed by cancelling those provisions of it which place a limitation on the amount of surplus income that Olive D. Stempel shall be entitled to receive and, also, that which requires that the surplus income remaining in any calendar year after the payments are made for the support of Mary V. Donovan as directed in the trust and to Olive D. Stempel as stipulated in the agreement (Exhibit B), be cancelled.

As concerns the first mentioned of these, the conclusion is that all income over and above that reasonably necessary in the judgment of the trustees for the support and care of Mary V. Donovan in each calendar year during the life of Mary V. Donovan is intestate estate and as such is to be distributed from time to time to the heirs at law of the testatrix, Mary Donovan. These during all the period since Mary Donovan's death, and at present, are the plaintiff, Olive D. Stempel and said Mary V. Donovan. The reasons and reasoning upon which this determination predicates are set out at length in "Amended Memorandum of Decision" which was filed May 31, 1938, and later withdrawn to permit the parties to submit certain additional claims. This conclusion is believed to be sanctioned by the opinions in *New Haven Bank vs. Hubinger,* 117 Conn. 417, 422, and *Shepard vs. Union & New Haven Trust Co.,* 106 id. 627, 639, 640.

It predicates upon the premise that since the testatrix never conceived the possibility of surplus income, and hence made no testamentary disposition of it, she could obviously have harbored no intention concerning it, which latter, as stated or if discoverable, would determine the destination of the same and the absence of which leaves it to the statutes applicable to intestate estates to designate. *New Haven Bank vs. Hubinger, supra,* p. 420; *Shepard vs. Union & New Haven Trust Co., supra,* p. 633. For the same reasons, no basis exists to distinguish the situation presented from one in which a particular provision describes an annuity instead of, as here, a direction to pay income, and principal, if necessary, for the support and maintenance of the named beneficiary, as counsel for the defendants urge. If the surplus income is specifically undisposed of and no provision appears in the will as to what shall be done with it, in the contingency that it eventuates, it becomes of necessity, intestate estate, just as it forms part of the principal of the trust fund or residuary estate where so provided. *Wentworth vs. Fernald,* 92 Me. 282, 42 Atl. 550, 552;

*McKnight's Executors vs. Walsh,* 24 N.J. Eq. 498; *Matter of McCormick,* 40 App. Div. 73, 57 N.Y.S. 548 (affd. 163 N.Y. 551, 57 N.E. 1116).

This conclusion disposes of the subject matters of the other two prayers for relief, since it follows therefrom that (a) there is no "surplus income" within the concept of the will in which either Olive D. Stempel or Mary V. Donovan, has any "title or rights" which could furnish the occasion for definition; and (b) since, admittedly that part of the so-called agreement of compromise which it is sought to have reformed predicates upon the theory that there is surplus income and the latter is the subject matter upon which it purports to operate, when, in fact, there is none, the correction of the writing would but perpetuate the error and, moreover, give sanction to it. This, a court of equity will not do. 53 C.J. *Reformation of Instruments* §17; and see, *Dickinson vs. Glenney,* 27 Conn. 104.

Moreover, the purpose of reforming a written instrument is to cause it to truly state the unexpressed or imperfectly described agreement of the parties. It conceives a material difference between what the parties orally undertook and that which they wrote and executed. *Bishop vs. Clay Insurance Co.,* 49 Conn. 167, 171, 172. No claim is made in the pleadings and the agreed statement of facts exhibits no foundation for any, that the writing (Exhibit B) does not accurately state the understanding of the parties when it was signed. This being so there is nothing to correct or reform. What is really suggested is that the undertaking be changed in the respects referred to above. The result of this would be, when considered in the light of the conclusion that the surplus income is intestate estate, that Olive D. Stempel be permitted to share in it fully as though the agreement had not been made. It is nowhere said that that was the contractual intention. Hence, the proposition involves not the reformation of the writing to cause it to express the actual agreement of the parties, but the making of a new contract—a feat not within recognized principles of equity jurisprudence. *Johnson vs. Johnson,* 206 N.Y. 561, 100 N.E. 408, Ann. Cas. 1914B, 407. It may be that the agreement entered into, based, as it is stipulated, upon a mutual mistake of law, is void and that the court would be justified were it asked to do so, in ordering it to be delivered up and cancelled. But the only purpose in reforming it would be to establish it as a continuing medium legally competent to

fix and regulate the rights of the parties to the surplus income. *Churchill vs. Meade,* 92 Ore. 626, 182 Pac. 368. However, as already observed, these rights and interests derive from the statute governing the distribution of intestate estates (Gen. Stat. [1930] §4982) and not from the will. *New Haven Bank vs. Hubinger, supra,* p. 428; *Shepard vs. Union & New Haven Trust Co., supra,* p. 640. There is nowhere evinced a purpose to vary the respective shares to which the parties are entitled from that source. Hence, there is no point in reforming the agreement (Exhibit B) if it were otherwise permissible so that the parties would receive under it that which is already vouchsafed by law. Incidentally, the writing in question was never executed by Mary V. Donovan (even though she was incompetent) nor by her conservator. Neither she nor her estate was bound by its terms. For all these reasons, cancellations of the particular provisions requested and reformation accordingly, is denied.

The court is asked to say whether the agreement in question (Exhibit B) standing unreformed, is valid. Obviously, a contract may be absolutely void, or though not innately so, yet invalid and unenforceable as concerns one or more of the parties to it. The queries propounded fail to indicate to which of such situations they apply. However, whether the undertaking be intrinsically invalid is of academic importance only. The real question is whether it is binding on Mary V. Donovan, which, in turn, presents the query whether it is competent to authorize the trustees to make the disbursements provided for therein to plaintiff, Olive D. Stempel, and to continue to do so in the future. For whether considered, as the agreement contemplates, as trust funds or, as found here, intestate estate, Mary V. Donovan's rights in such funds have been and will be affected by the performance of the purported contract. It is the conclusion that the undertaking does not bind Mary V. Donovan or her estate and is void as to her and that it has furnished and continues to impart no authority to the trustees— nor the executors if they have or expect to participate in its performance—to pay out trust funds to plaintiff Olive D. Stempel pursuant to its provisions. This for the following, among other reasons.

The agreement, of course, purports to be one of compromise of a will contest. As hereinafter concluded, neither the executors nor trustees, were, therefore, necessary parties to it. Essentially the controversy was between Olive D. Stempel as

a contesting heir and next of kin on the one side and Mary V. Donovan as the principal beneficiary on the other. *Leavenworth vs. Marshall,* 19 Conn. 408, 415; *Comstock vs. Hadlyme Ecclesiastical Society,* 8 id. 254, 262. The latter being incompetent, and a conservator of her estate having been appointed, was powerless to execute a valid contract. *Doris vs. McFarland,* 113 Conn. 594, 605. While, as below concluded, the court of probate was without power to authorize an executor or testamentary trustee to execute the agreement of compromise, it might well be held to possess jurisdiction to empower a conservator to do so under the provisions of section 4939 of the General Statutes, Revision of 1930 (amended in respects not material here in Cum. Supp. [1935] §492c).

The conservator, however, neither applied for authority to execute or otherwise became a party to the writing and did not execute it. It was the executors and trustees, only, who petitioned the court of probate for the approval of the so-called agreement of compromise (Exhibit B). In such application the conservator on the estate of Mary V. Donovan was not mentioned. Moreover, the context of the agreement conclusively shows that it was not contemplated that Mary V. Donovan's conservator be a party to it, a fact which is confirmed by the statements made in the petition to the court of probate. This seeks approval only for an agreement into which the executors and trustees had entered "with said Olive D. Stempel." From all this it is apparent that the signatories considered that the consent of Mary V. Donovan's conservator was not essential. Under these circumstances it is necessary to conclude that Mary V. Donovan and her estate were not bound by the agreement (Exhibit B) and that as to them, in the light of the facts submitted, that undertaking is void.

The plaintiffs appear to contend that even though the agreement (Exhibit B) was not binding and hence, when it was executed not enforceable against the estate of Mary V. Donovan, yet that condition of things was remedied when Mary V. Donovan's conservator executed the agreement of November 9, 1930, and the extension of its period of operation, on November 9, 1934. (In this provision was made for an additional distribution of surplus income to Olive D. Stempel as guardian of plaintiffs, Wanda Eugenia and Audrey Jane, for the support and education of the latter.) The effect of this, it is claimed, was to ratify the agreement of October 30, 1922, and to confirm all that had been done in performance of the latter since the

date of its execution. That contention overlooks the circum-
stance that there is nothing in the agreement (Exhibit B) which
indicates that any of the parties to it—nor is there anything in
the proceedings before the court of probate to likewise show—
purported to act for or in behalf of the estate of Mary V.
Donovan or her conservator, and consequently ignores an
essential element, viz., that conduct to be the subject of ratifi-
cation must have been engaged in in behalf of the person claimed
to have ratified it. Palpably, neither the executors, the trus-
tees, nor Olive D. Stempel, who were the signatories to the
agreement in question (Exhibit B) assumed to act, in executing
it, in behalf of the estate of Mary V. Donovan or her conser-
vator. The act of neither of them, therefore, could be the sub-
ject of ratification by the latter. *Matulis vs. Gans,* 107 Conn.
562, 566, 567.

Moreover, the context of the agreement of November 9,
1930, and that of November 9, 1934, which extended the lat-
ter's period of operation, repudiates the existence of any intent
upon the part of Mary V. Donovan's conservator to adopt
the agreement of October 30, 1922 (Exhibit B) as of the date
of its execution. The only mention in the former of the pro-
visions of the latter is, first, by way of preamble and, next, as
its subject matter constituted one of the factors to be taken into
account in determining "surplus income" as therein defined,
out of which the specified payments to be made Olive D.
Stempel as guardian of her daughters were to be made. There
is even ground for doubt whether Mary V. Donovan's con-
servator gave assent by its execution of these agreements to
the making of future payments from that date of the sums
stipulated to be made plaintiff Olive D. Stempel, personally,
in accordance with the agreement of October 30, 1922 (Exhibit
B), for the purpose of the undertakings of November 9,
1930, and November 9, 1934, would seem to be solely to make
provision for the support, education and maintenance of the
minor daughters of Olive D. Stempel and no change was pur-
ported to be made in them concerning the status of Olive D.
Stempel as fixed in the agreement of October 30, 1922 (Exhibit
B). That, however, would appear to be immaterial since in
the instance first mentioned no obligation would be assumed
by the estate of Mary V. Donovan, or by her conservator,
while if the view be permissible that it was the conservator's
intention in executing the agreements of November 9, 1930,
and November 9, 1934, to bind the estate in the future from

such dates, to the provisions of the undertaking of October 30, 1922, the obligations purportedly thus assumed by the conservator would not be enforceable against the estate of Mary V. Donovan if attacked in her behalf, for lack of consideration. For it is apparent that the only purpose of the contract of October 30, 1922 (Exhibit B) was to compromise the then pending appeal from probate and that, on November 9, 1930, had then been a *fait accompli* for a period of about eight years.

It is provided in the agreement (Exhibit B) that the same "shall not become operative or binding on either party unless and until it shall be approved by said Probate Court." On November 11, 1922, the trustees and executors made application to the court of probate for the approval of the agreement in question as a compromise and settlement of the claim which Olive D. Stempel had made against the estate and also the appeal taken from the admission of the will. An order was made on November 16, 1922, to the effect that "a compromise of said claim be effected in accordance with said agreement" (Exhibit B). It is apparently contended that this confers an unction on the conduct of the executors and trustees in executing and in performing that undertaking and upon the agreement, itself, which absolves any infirmities innately present in the latter and existent in the acts of the former.

Whether the proceedings had were potent to hallow either or both depends, of course, upon whether the court of probate acted within its jurisdiction. Courts of probate, of course, have only those powers which have been vested in them by statute, together with such as are essential to the discharge of duties imposed upon them or "are necessary for the adjustment of the equitable rights" involved in matters upon which they have express or implied power to pass. *Union & New Haven Trust Co. vs Sherwood*, 110 Conn. 150, 161; *Culver vs. Union & New Haven Trust Co.*, 120 id. 97, 102, 103. The authority of the court of probate to make the orders in the matters here under examination derives, if it exists at all, from the provisions of section 4939 of the General Statutes, Revision of 1930 (amended in respects not presently material, in Cum. Supp. [1935] §492c) quoted in the footnote (2). In so far as

(2) Sec. 4939. The court of probate, after public notice and hearing, may authorize executors, guardians, conservators, administrators, trustees in insolvency and trustees appointed, or whose appointment shall have been approved, by such court, to compromise and settle any doubtful or disputed claims or actions, or any appeal from probate in favor of or against the estates or persons represented by them.

the latter have to do with the adjustment of the claim for which Olive D. Stempel brought suit the power exercised by the probate court is unquestionable. As respects that portion of it which affects to approve the action of the executors and trustees in purporting to compromise the appeal from the decree of the court of probate approving and admitting the will, a different situation is presented.

The admission of a will to probate is a proceeding *in rem* (68 C.J. Wills §597) or, at least, *quasi in rem*. 1 Cleaveland, Hewitt & Clark, Probate Law and Practice of Connecticut (1926) §378. The only issues are (1) whether the statutory requirements with respect to execution and attestation have been complied with; (2) whether the testator possessed the requisite capacity to make a will and, when raised, (3) whether the will was procured by fraud or the provisions contained in it the product of undue influence. *Johnes vs. Jackson*, 67 Conn. 81, 90; *Fortune vs. Buck*, 23 id. 1, 7, 8; *Comstock vs. Hadlyme Ecclesiastical Society*, 8 id. 254, 260; 68 C.J. Wills §621. Since the Superior Court sits as a court of probate in an appeal from a decree of a court of probate, approving and admitting a will, its inquiry is no broader and its judgment no more comprehensive than that of a probate court. *Vivian's Appeal*, 74 Conn. 257, 259. The final result either of a decree admitting a will unappealed from in the court of probate, or affirmed in this court on appeal from the court of probate, is the authentication of the instrument as the last will and testament of its author—no more than that. *Marcy vs. Marcy*, 32 Conn. 308, 316; *Johnes vs. Jackson, supra*, p. 89.

The types of appeals from probate which the statute (Gen. Stat. [1930] §4939) empowers courts of probate to authorize, *e. g.* an executor, to "compromise and settle", are those only which are "in favor of or against the *estates* of persons *represented by them*." In proceedings for the establishment of a will, an executor represents no estate and no person, but "the dead." *Belfield vs. Booth*, 63 Conn. 299, 309. The real controversy, when the validity of a will is assailed, is not between the executor and the contestants, but between the opposing heir and the beneficiaries named in the testament. *Leavenworth vs. Marshall*, 19 Conn. 408, 415; *Comstock vs. Hadlyme Ecclesiastical Society*, 8 id. 254, 262. The executor is but a nominal party on such an appeal and has no duty to defend; the real parties are those claiming under the will who.

may defend or not, as they see fit. *Comstock vs. Hadlyme Ecclesiastical Society, supra,* pp. 260, 262, 263. For the reasons discussed, as well as others not necessary to mention, it is the conclusion that an appeal from a decree of a court of probate approving and admitting a will it not an "appeal from probate in favor of or against the estates of persons represented by" an executor or trustee of a trust created in such will, within the meaning of the statute (Gen. Stat. [1930] §4939). If this be sound, it follows that the order of the court of probate in so far as it purported to approve the claimed agreement of compromise of October 30, 1922 (Exhibit B) was without the jurisdiction of the court of probate to make and hence, conferred no element of validity upon the same, nor authority to either the trustees or executors to execute or perform in accordance with its provisions. In fact, compliance with the provisions of that undertaking never required that the parties carry it out. For the obligation to perform was made conditional upon approval "by said Probate Court." This connotes a valid sanction, which, as the statute is construed here, the court of probate was impotent to give. The circumstance that the subject matter of the agreement of October 30, 1922, was described in the agreement of November 9, 1930, to which latter Mary V. Donovan's conservator was a signatory and which latter was approved by the court of probate, did not operate to approve such subject matter of the agreement of October 30, 1922, as of the date of such approval of the agreement of November 9, 1930. There was then, of course, no appeal from probate pending which could be the subject of compromise or settlement which could give occasion for an approval of a court of probate, the appeal from the decree admitting the will to probate having been then long since withdrawn.

Indeed, the real occasion for the order of the court of probate of January 14, 1931, was the agreement mentioned *supra* wherein it was provided that the plaintiff, Olive D. Stempel, as guardian of Wanda Eugenia and Audrey Jane Stempel, should be paid one-half of the income from the trust fund remaining in each year while it might be in effect, after satisfying the expense of administration, providing for the comfortable support of Mary V. Donovan and for the disbursements to be made to Olive D. Stempel pursuant to the terms of the writing of October 30, 1922 (Exhibit B). This was executed by Olive D. Stempel as legal guardian of Wanda Eugenia and Audrey Jane Stempel of the first part; Olive D. Stempel, personally,

of the second part; the trustees, as parties of the third part, and the conservator of the estate of Mary V. Donovan, as party of the fourth part. It stipulated that it should be opera- tive for a period of two years from its date (viz., November 9, 1930) and that: "if at the termination of said period of two years, the circumstances of the minor children shall not have been materially altered, then.... [it]....shall be continued for an additional period of two years." Apparently, the latter condition was found to prevail, since on November 9, 1932, the parties united in a writing extending the operative term until November 9, 1934, following which by the terms of a writing on the last named date, the agreement was continued in effect until November 9, 1936. · The original of these under- takings (viz., that of November 9, 1930) was executed about one month next following the return of the instant action to this court. It stated as the reason for the arrangement con- tained in it, that the rights of the plaintiffs here and of Mary V. Donovan in and to the surplus income from the trust fund, "either under the terms of said will or as heirs-at-law of said Mary Donovan are undetermined" and that pending such final determination, "the immediate necessities of said minors.... make it desirable and necessary that some temporary settlement and compromise be made for the alleviation of their immediate necessities." It and each of the succeeding stipulations extend- ing the period of operation of the undertaking then proceeded to thwart all possibility of a declaration of the rights of the interested parties in and to the surplus income by providing that the instant action "shall be permitted to remain upon the docket of the court during the continuance of this agreement without any proceedings being had therein." It was, appar- ently, only when, on November 9, 1936, the trustees refused longer to perform in accordance with the arrangement, that the plaintiffs determined to press the case at bar to a decision. In the meantime, up to and inclusive of the calendar year 1936, the trustees paid over to Olive D. Stempel, as guardian, in performance of the provisions of these stipulations, a sum totalling almost $10,000. Each of these agreements was made the subject of "interlocutory judgments" entered in this action, and in connection with each of them the trustees applied to the court of probate for its approval, representing that the purpose was to make a "temporary settlement" of a "doubt- ful and disputed claim" held by the plaintiffs, then both minors, against the estate of Mary Donovan. Orders were made in

each such instance, as thus prayed for.

Plaintiffs, in their prayers for relief, inquire whether the agreement of November 9, 1930, and those continuing it in operation were valid. These will be hereinafter together re-ferred to as the agreement of November 9, 1930. The answer involves consideration of the stipulation itself, and of it as af-fected, if it was affected, by (a) the proceedings of the court of probate approving it and (b) the interlocutory judgments entered in the instant action.

Of note in this connection is the fact that the will conferred no right on the minor plaintiffs, Wanda Eugenia and Audrey Jane Stempel, to share in the income from the trust fund in any event or contingency. The principal as it remained after the death of all three, viz., Mary V. Donovan, Mrs. John Hoar, and their own mother, Olive D. Stempel was, alone, to be theirs. Whether the surplus income constituted part of the trust fund as the parties assumed in the agreement of October 30, 1922 (Exhibit B) or intestate estate as is concluded here, in neither event did they have any right to share in it as either.

It is evident, therefore, that if the agreement of November 9, 1930, was intended to apply to surplus income when ascer-tained to be intestate estate, it might be held to contemplate, in effect, an assignment of so much thereof as might be ordered distributed from time to time, from the shares of each of the heirs-at-law (viz., Olive D. Stempel and Mary V. Donovan if the latter were competent) to the minor children of Olive D. Stempel (viz., Wanda Eugenia and Audrey Jane Stempel). This, it is believed, is the viewpoint of its purpose most inclining to uphold its validity. While, as respects Olive D. Stempel, the undertaking might be valid, upon such a construction (Union & New Haven Trust Co. vs. Sherwood, 110 Conn. 150, 160) it is otherwise as concerns Mary V. Donovan, for as noted supra, no compensating consideration to her or her estate is either stated or discoverable from the facts furnished. At best, therefore, the agreement in question is voidable at her instance or, since she is incompetent, at that of her con-servator. If, on the other hand, the view be taken that the contract was intended to operate upon surplus income from the trust fund, as such, then, of course, it contemplated (though in mutual mistake of law) an authorization to the trustees and an assent on their part to divert the same from the purpose to

which they all understood it was to be devoted, viz., to be added to the principal of the trust fund. That, obviously, would contemplate illegal conduct on the part of the trustees and connivance in it by the other contracting parties, the influence of which would taint the undertaking with invalidity.

A third aspect in which the agreement in question may be considered is in that of intending a construction of the will by which it was attempted to fix the rights of the parties under the testament for and operative only during, a limited period of time. For all practical purposes this must be examined as if the construction agreed to had been adopted as a complete and final determination of the rights of the respective parties. Whether or not the undertaking was innately void as involving an effort to change the provisions of the trust in material particulars need not be considered, since other considerations suffice to reveal legal delinquencies decisive for present purposes of the queries propounded in the prayers for relief. Similar treatment was accorded the agreements involved in *Union & New Haven Trust Co. vs. Sherwood, supra,* and *Union & New Haven Trust Co. vs. Watrous,* 109 Conn. 268, in neither of which any question was raised concerning the validity of the agreements made, in the light of which the testamentary dispositions were considered, though here, certain of the prayers for relief are sufficiently comprehensive to warrant an inquisition into every possible phase of the undertaking to which they refer.

However, as already observed with respect to the agreement of October 30, 1922, the payments made by the trustees from so-called surplus income apparently occurred because the trustees relied upon the assent or even the direction of Olive B. Stempel and Mary V. Donovan's conservator contained in the writing in question. So far as the former is concerned she can hardly now be heard to question the conduct of the trustees in this respect were she inclined to do so, for she, of course, was competent to give her daughters the whole or any part of what she would be entitled to receive with or without consideration. *Union & New Haven Trust Co. vs. Sherwood, supra,* p. 160. Mary V. Donovan, however, had she assumed to do so, could herself make no valid contract. *Doris vs. McFarland,* 113 Conn. 594, 605. Her conservator could bind her estate only if it acted within the limits of authority possessed by it. This is defined by statute. *Church vs. Rosenstein,* 85 Conn. 279, 281; *Brown vs. Eggleston,* 53 id. 110, 119. It, in general, con-

sists of the management of the estate and the collection of all debts due to and payment of all sums owing by the ward. The conservator may mortgage or sell the real property of his ward, even to obtain funds wherewith to support the latter, however, only under the authority of a court of probate (Gen. Stat. [1930] §§4823, 4945). Although it seems that it was other-wise in earlier days (*Hutchins vs. Johnson*, 12 Conn. 376, 382), he may submit claims existing in behalf of or against his ward's estate to arbitration, or compromise or settle such claims only with the approval of the probate court. Gen. Stat. (1930) §§4939, 4940; *Union &New Haven Trust Co. vs. Sherwood*, *supra*, p. 160.

The power of Mary V. Donovan's conservator to bind her or her estate as a party to the agreement of November 9, 1930, and to thus supply valid authority to the trustees to pay over to others any part of the surplus income to which she might be or become entitled or in which she had an interest is de-pendent upon whether the probate proceedings purporting to approve that undertaking were valid in themselves and, suf-ficient if valid, to authorize the conservator to participate in the business. If the order of the court of probate was legal that must result because it was an exercise of authority con-ferred by section 4939 of the General Statutes, Revision of 1930. *Union & New Haven Trust Co. vs. Sherwood*, *supra*, p. 160. To be so, it must have been a doubtful and disputed claim or action in favor of or against Mary V. Donovan's estate which was the subject of its attention. That it was so viewed by the trustees who applied for approval of the agree-ment and by the probate court in purporting to sanction it, is apparent both from the contents of the petition and the terms of the order granting the latter. The question presented is, therefore, whether the contentions of parties named in a will concerning the construction of the provisions of such testa-ment are "doubtful and disputed claims or actions" within the concept of the statute (Gen. Stat. [1930] §4939). This ques-tion was adverted to in *Union & New Haven Trust Co. vs. Sherwood*, *supra*, pp. 160-162, but not decided because it was found that the effect of the agreement there referred to was decidedly to the advantage of the minor whose estate was involved, and he, moreover, upon attaining his majority would be able to test the validity of what was done.

It was intimated, though not determined, that the power of

a court of probate to approve an agreement of compromise under the authority of the statute in question exists, if at all, where a construction of a will is involved if the latter is merely "incidental" to the exercise of the power actually conferred or "necessary for the adjustment of the equitable rights before the court." *Union & New Haven Trust Co. vs. Sherwood, supra,* p. 161; *Culver vs. Union & New Haven Trust Co., supra.* In the present instance, the agreement determining a construction of Mary Donovan's will—even though not a final one—was contemplated to be conclusive of the rights of the parties while it remained operative. The meaning given the provisions of the testament therein (though in the alternative) and its consequent effect upon the rights of the parties to it under the will was not incidental to any other subject matter, nor concerned with the "adjustment of any equitable rights" arising from another subject of contract. The construction of the provisions of the will was *itself* the very business with which the parties were engaged and the only matter with which they were concerned in making and executing the agree' ment. Hence, the court of probate in assuming to approve the agreement was in reality purporting to sanction a con' struction of a will, since as observed in *Union & New Haven Trust Co. vs. Sherwood, supra,* p. 160, "the compromise of any right which [one] may have under a will involves the con' sideration of what right, if any....[he]....has." This was a matter beyond its jurisdiction. *Union & New Haven Trust Co. vs Sherwood, supra,* p. 161; *Chamberlain's Appeal,* 70 Conn. 363. Its order was consequently void unless authorized by the provisions of the statute. Gen. Stat. (1930) §4939; *Brown vs. Eggleston,* 53 Conn. 110, 120. To hold the latter applicable it would be necessary to conclude that its effect was to invest courts of probate with powers not possessed before its enactment. Since this statute was enacted it has been thrice said, without any mention of its provisions, that courts of pro' bate lack original jurisdiction to construe wills. *Union & New Haven Trust Co. vs. Sherwood, supra,* p. 161; *Chamberlain's Appeal,* 70 Conn. 363, 377; *Culver vs. Union & New Haven Trust Co., supra.* It is the conclusion that the order of the court of probate purporting to approve the agreement of November 9, 1930, made January 14, 1931, and, also, that of January 24th affecting to approve the agreement under which said undertaking of November 9, 1930, was stipulated to be continued in effect up to and including November 9, 1936,

and authorizing the trustees to become parties to each, were not orders empowering the trustees to "compromise and settle" a "doubtful or disputed" claim or action within the meaning of the statute (Gen. Stat. [1930] §4939) and consequently conferred no valid power upon the trustees to execute said agreements or to perform them. As concerns the conservator on the estate of Mary V. Donovan, the transcript of all the proceedings had before the court of probate made a part of the agreed statement of facts at the request of the court, contains no intimation that the conservator ever sought or was given authority by the court of probate to enter into the contracts in question, as the result of any application made by the conservator. The trustees are chargeable with the conservator's lack of power to do so, under the circumstances. *Church vs. Rosenstein, supra,* p. 281. Its assent to the payment of surplus income to the plaintiffs, Wanda Eugenia and Audrey Jane Stempel, pursuant to the agreements in question, was not binding upon Mary V. Donovan or her estate. Ordinarily, of course, the ward upon regaining competency would have the right to affirm those transactions if she deemed them advantageous to her *(Lawrence vs. Morris,* 167 App. Div. 186, 152 N.Y.S. 777), and in such case would be entitled to the benefits thereof. *Church vs. Rosenstein, supra,* p. 282. The agreements are void as to her, unless the so-called interlocutory judgments are competent to save them from that fate.

These were entered in the instant action on December 27, 1930 and January 11, 1935, respectively. The first mentioned purported to "approve and ratify" the agreement of November 9, 1930, and the second, the writing of November 9, 1934, which latter continued the undertaking of November 9, 1930, in effect until and including November 9, 1936. So-called interlocutory judgments are not judgments at all. 2 Black, Judgments (2d ed., 1902) 1046. They are merely orders of conditional or provisional character which because they lack the finality of judgments are subject to revocation or modification at any time during the course of a proceeding that a just disposition of the cause in which they are entered may require. *Bassett, Bank Commissioner vs. City Bank and Trust Co.,* 5 Conn. Sup. 450. *See, Reiley vs. Healey,* 122 Conn. 64, 77. As the instant cause still pends and will until entry of judgment in accordance with this memorandum, the so-called interlocutory judgments are still revocable if they, as they do, collide with the conclusions stated in this, the final judgment.

But for the fact that they are considered nullities for the reasons presently stated, the question of whether they should not now be revoked would be presented. The purpose of interlocutory orders or "interlocutory judgments", as they are sometimes called, is "the determination of steps or proceedings in a cause preliminary to final judgment." 33 C.J. Judgments §18. The subject matter of the alleged "interlocutory judgments" here under consideration bore no relation to any determination involved in the judgment to be rendered in the instant cause and neither disposed of—nor purported to—any preliminary matter or issue calculated to pave the way for a final judgment. They were, in fact, but the undertakings of the parties concerned in them in which, in effect, they agreed that pending a determination of their respective rights and interests, the payments stipulated therein would be made. This was not of the controversy submitted to the court for determination, but outside of it. When the court attempted to sanction the acts of the parties in respect of a matter not within the issues submitted to it and not connected with any subject involved in a decision of such questions, and as relief *pendente lite* when none was prayed for, its order became *coram non judice*. See, also, Kane vs. Kane, 120 Conn. 184, 189.

Even if it could be considered, however, that these "interlocutory judgments" possessed judicial force, they would be impotent to infuse validity into the agreements upon which they were designed to operate. This because each of them provided that it should "become effective and binding. . . . forthwith upon its approval by the Probate Court for the District of Middletown. . . ." Upon the conclusions stated, *supra,* the court of probate was without jurisdiction to confer valid approval, in consequence of which the condition named in the "interlocutory judgments" has not been satisfied. It results that the so-called "interlocutory judgments" were impotent to validate the agreements.

The court is asked to declare "the effect of the performance of said agreements by the parties thereto upon the rights of the parties to this action." If by this it is intended to suggest that whatever the rights and liabilities of the respective parties as against or toward each other might otherwise be, they have been affected by acquiescence or estoppel operating upon the one in favor of the other, it suffices to say that there are no facts before the court from which any inference might be drawn in that respect. Thus, it is not clear from the agreed

statement of facts by what mechanics or by following what course the money paid over to Olive D. Stempel, individually, and to her as guardian of her minor daughter and to Francis Rohrmayer, Esq., as guardian of Wanda Eugenia Stempel (now Gager) came into the possession of these parties. It is only indicated that the trustees parted with the funds in question and that they were received by such parties in the amounts respectively shown in the schedule attached to the stipulation, but whether immediately from the trustees or from the executors, is not stated. In consequence there are no facts upon which the court is enabled to predicate any conclusion that the respective rights and liabilities of the parties have been affected at all or in any degree by the conduct of either of them in such manner as to mitigate, or relieve from, liability or otherwise affect the rights of any of them as respects the consequences which ensure from their conduct. It results that Mary V. Donovan is entitled to have restored to the trust fund all monies which have been paid out in performance of the agreements in question plus interest on each of the sums so disbursed from the date of such payments to the date of resti- tution. If this is not done voluntarily her conservator, since she is incompetent, should demand an accounting from the trustees either in the Court of Probate for the District of Middletown, or in this court. *Dettenborn vs. Hartford-Na- tional Bank and Trust Co.,* 121 Conn. 388, 391.

The executors, trustees and conservator "pray that in event this court shall hold that said trustees have erred in the dis- position heretofore made by them of the net income of said trust not used for the support of Mary V. Donovan, this court will make an adjudication....as to the resulting duties and obligations of said executors and said conservator and said trustees and a decree granting said....[parties]...." such advice as will enable them to proceed with the administration of their respective trusts promptly and according to law.

As concerns this request again it is to be noticed that neither the agreed statement of facts nor the pleadings inform the court whether any accounts have been rendered by either the trustees or Mary V. Donovan's conservator, nor the contents of such accounts. It can only be said, therefore, that the trustees should file an account in the court of probate or one supple- menting those already filed showing with particularity from the beginning all income received from the trust fund, and all pay- ments made therefrom and to whom and for what purpose

such disbursements were made. This, of course, will exhibit the payments made to Olive D. Stempel, personally, and to Olive D. Stempel as guardian of Wanda Eugenia and Audrey Jane Stempel, and Francis Rohrmayer, Esq., as guardian of Wanda Eugenia Stempel, and will, likewise, show the total accumulated surplus income. The action to be taken with respect to such account and what other orders, if any, are to be made regarding the administration of the estate are matters exclusively within the jurisdiction of the court of probate—at least in the first instance. *Reiley vs. Healey, supra,* p. 79. And the fact that previous accounts filed by the trustees have been accepted, if they have, will not prevent the court of probate from now refusing to allow credit to the trustees for any item for which credit is claimed or making any order appropriate to the situation as it may now find it to exist, since under the undisputed facts no final account has been, or, in the nature of things, could have been filed up to this time. *Reiley vs. Healey, supra,* p. 77.

Of course, if the trustees in such an account show that for the period since they have been administering the trust, income has accumulated over and above that required in the exercise of their discretion for the comfortable support of Mary V. Donovan, and the court of probate so ascertains and orders the same distributed, Olive D. Stempel will be entitled to one-half of the sums so ordered, as will, also, Mary V. Donovan. Upon the guardians on the estate of Wanda Eugenia Stempel (now Gager) and Audrey Jane Stempel and Mary V. Donovan's conservator, also filing accounts each charging themselves with all that they have received or should have received from the beginning and showing the disposition made of it, it will be possible under the guidance of the court of probate to adjust the several matters and fix the liabilities, if any, of each party toward the others or their wards or the *cestui*.

Inasmuch as in such or any proceedings which may be had in this court, a conflict of interest exists between Mary V. Donovan's conservator and one of the trustees, viz., The Middletown Trust Company, which occupies both of these positions, there is a duty upon the part of The Middletown Trust Company to resign as conservator of Mary V. Donovan's estate, and if it fails to do so, the situation thus presented will be one with which the court of probate, in so far as it may have jurisdiction, or this court if an action shall be brought here, will be called upon to deal. Counsel's suggestion that this should

not be necessary because the decision of what should be paid for Mary V. Donovan's support rests with two of the trustees and the third (which is also her conservator) is but a "stake-holder", cannot be adopted. The will does leave the amounts to be disbursed or expended to be determined by two of the trustees but also places the duty of making the payments upon the "trustees." Moreover, concern is had here, not with disbursements made in accordance with the provisions of the will, but contrary to them, and in this, the trustee, which is also Mary V. Donovan's conservator, is a participant. Aside from that, The Middletown Trust Company as conservator suing The Middletown Trust Company as one of the trustees or otherwise occupying an antagonistic legal position to it, places too great a strain upon credulity, to say nothing of the ethical phases of such a situation.

The conservator's successor should then determine whether the proper management and conservation of Mary V. Donovan's estate does not require that suit be instituted asking the court to declare void as to Mary V. Donovan, the agreement of October 30, 1922, and that of November 9, 1930, together with those by which the latter was continued in effect until and including November 9, 1936. He should oppose the allowance of credits in the accounts of the trustees of any sums paid by the trustees to Olive D. Stempel, individually, and to the latter as guardian of Wanda Eugenia Stempel and Audrey Jane Stempel or Francis Rohrmayer, Esq., as successor guardian of Wanda Eugenia Stempel under the agreements respectively mentioned upon an account filed by the trustees. The fact that the trustees acted in good faith in making such disbursements is no defense. *Lawrence vs. Security Co.*, 56 Conn. 423. The trustees, if they are not allowed credit in their accounts for moneys paid out in accordance with the agreements mentioned or are otherwise subjected to liability therefor, will be entitled to be reimbursed by Olive Stempel, individually, for the sums so paid to her under the agreement of October 30, 1922 (Exhibit B) and from her, personally, and from Francis Rohrmayer, Esq., personally, for such sums as have been so received by each of them from the trustees in their capacities as guardian; likewise, from Wanda Eugenia and Audrey Jane Stempel, for the monies disbursed to their said guardians in performance of the provisions of the contract of November 9, 1930, as continued in operation until and including November 9, 1936. This because, since such agreements were entered

into in mutual mistake of law, though not in fraud, they have resulted in an unjust enrichment on the part of those for whose benefit such funds were paid out. As concerns the monies paid to Olive D. Stempel under the agreement of October 30, 1922, it would appear that if a distribution of intestate estate is ordered, a whole, or at least, a partial adjustment, can be made of the sums which Olive D. Stempel, individually, has received from the trustees pursuant thereto by appropriate credits or debits in the accounts. As the matter is essentially one to be administered by the court of probate, or to the extent that certain phases of it may be involved here, in or incident to an action in this court against the trustees (if that should eventuate) this court can go no further than has been outlined above in advising the trustees, guardians and conservator in the premises.

In the likelihood that Mary V. Donovan shall become possessed of an estate of her own if and when the court of probate ascertains that there is intestate estate and orders a distribution thereof, the question arises whether there will be any duty on the part of the trustees to pay to her any portion of the income or principal of the trust fund after she receives such estate and while she remains possessed of it or any substantial part of it. The pertinent provisions of the will read as follows:

"So much of both the income and principal of such trust fund as is necessary in the discretion of . . . . [naming two of the trustees] or their successors to provide for the comfortable support of my daughter, Mary V. Donovan during the term of her natural life shall be expended or paid over by my said trustees for said purpose." This phraseology imposes on the trustees the duty of determining what sums may be required from time to time to insure the beneficiary's "comfortable support" (Bridgeport-City Trust Company vs. Beach, 119 Conn. 131, 140; Cromwell vs. Converse, 108 id. 412, 424, 425; Jaretzki vs. Strong, 98 id. 357, 369), which in turn permits them, in the performance of this obligation, as well as in the most husbandlike conservation of the fund, to maintain such a reserve of excess income as in their considered judgment sound business suggests or dictates.

Whether the trustees, however, would act within the discretion bestowed upon them in paying over or expending income for the benefit of Mary V. Donovan's care and support if she

acquires an estate of her own is one upon which there is so much confusion in the cases that any attempt at reconciling the authorities would be futile. About the only rule upon which common ground is found among them is that the answer is to be determined by giving effect to the testator's intent when that is plainly expressed or when it is ambiguous whether an intention is implied from the scheme evinced in the will as a whole. But the application of the rule has led to so much diversity of conclusion as to beggar the aid of decisions in other cases. *Wentworth vs. Fernald,* 92 Me. 282, 42 Atl. 550, 552; *Matter of Gatehouse,* 149 Misc. 648, 267 N.Y.S. 808, 813. The last named case attempts an analysis of the New York authorities which in the main adopt the thesis evident in the expression, *e. g.* in *Holden vs. Strong,* 116 N.Y. 471, 475, 22 N.E. 960, 961: "We do not understand that in order to receive the benefit of the provisions of the will it is necessary for him to remain idle....neither does the fact that he is frugal and saving and has accumulated a fund which he has deposited in the bank deprive him of the right to support provided for him." To select one of many of similar tenor of comparatively recent date, there is *New York Trust Company vs. Murray,* 120 N.J. Eq. 494, 186 Atl. 531. Contrariwise, or seemingly so: *Wentworth vs. Fernald,* 92 Me. 282, 42 Atl. 550; *McKnight's Executors vs. Walsh,* 24 N. J. Eq. 498; *Matter of McCormick,* 40 App. Div. 73, 57 N.Y.S. 548 (affd. 163 N.Y. 551, 57 N.E. 1116). In the latter category must be placed: *Hull vs. Holloway,* 58 Conn. 210, 217, and *Bridgeport-City Trust Company vs. Beach,* 119 id. 131, 138 (the latter involving a spendthrift trust).

In the instant case, however, the language expressive of the testatrix' intention seems singularly lacking in ambiguity. It makes it plain, first of all, that the occasion for making any payments to or expenditures for the benefit of the *cestui,* must be a matter of necessity, the existence of which is to be determined by two of the trustees. And next, that the amount of such payment is to be likewise so fixed, viz., " *So much....* as is necessary...." This limitation by the express terms of the will is made to apply not only to expenditures from the principal, but, also, from the income. From this it seems a fair deduction that the testamentary purpose is that no payment is to be made that is not required for the comfortable support of Mary V. Donovan because of her own inability to care for herself and then only so much as may be needed to meet

the situation created by her own financial plight and incapacity to earn. Obviously, it follows that if she becomes possessed of a personal estate sufficient to support and care for all her needs, the necessity envisaged by the will is non-existent or present only in so far as her own estate will not suffice for the purpose. *Hull vs. Holloway, supra,* p. 217; *Bridgeport-City Trust Co. vs. Beach, supra,* p. 138. Point is given this view by the provisions thereof with respect to payments for the support of the testatrix' sister, Mrs. John Hoar. The right of the latter to share in the benefits of the trust is conditioned expressly upon the circumstance that she "shall have expended all her own property"—patently indicative of the intention that no payments should be made her or for her benefit so long as she had property of her own which might be appropriated for the purpose. The right of Mary V. Donovan to participate in either the income from or principal of, the trust fund, required no such proviso. She was destitute of property of her own when the will was executed and when the testatrix died. The construction mentioned likewise dovetails with the other provisions of the will, since it tends to preserve the principal of the estate as a basis of affording income for the testatrix' other sister, Olive D. Stempel, when and if the latter becomes entitled to receive it and does no violence to the dominating purpose of the will, which is perceived to be that Mary V. Donovan shall at all times have proper care, maintenance and support. The conclusion seems justified, therefore, that the trustees, in event that Mary V. Donovan acquires an estate of her own, will be under no duty to and should refrain from making any payment to her conservator or expenditure in her behalf for her care or comfortable support so long as such estate will suffice for the purpose, or any in excess of any which when added to any estate possessed by her insufficient for the purpose, will operate to adequately insure her comfortable support and care. This does not mean, of course, that Mary V. Donovan is to be reduced to penury before she will be entitled to a resumption of payments from the income or disbursements, if necessary, from the principal after becoming possessed of estate of her own. The will gives ample evidence to the contrary and makes it plain that there shall at no time be any interval for any reason when her "comfortable support" will be in doubt so long as either income or principal of the trust fund is available to insure it.

As respects an allowance for counsel fees, this has been pre-

viously denied because the action was one in which the plaintiffs sought a declaration of their own rights and interests under the will. Practice Book (1934) §62; *West Haven Bank and Trust Company vs. McCoy*, 117 Conn. 489, 496. Since the previous judgment has been opened to permit the parties to make additional claims, however, the trustees, executors and conservator have sought advice and direction under the provisions of section 5683 of the General Statutes, Revision of 1930, and counsel for each of the parties ask for that reason that a reasonable sum for expenses and counsel fees be taxed as costs in the case, to be paid out of the estate. While it is true that many of the questions involved are precipitated by the allegations and prayers for relief contained in the complaint, it is likewise so that these underlie the relief asked by the defendant fiduciaries. It seems proper, therefore, that fair allowances be made to each of the participating parties. Counsel may at their convenience submit statements of their claims in this respect together with data upon which such claims are predicated.

Upon the pleadings and agreed statement of facts, the plaintiffs are advised:

(1) All money and other property in the hands of the trustees constituting accumulations of income from the trust fund created in paragraph 4 of the will of Mary Donovan, together with interest and income accrued thereon up to, but not including the current calendar year, over and above that portion of the income which has been expended for the proper care and support of Mary V. Donovan, constitutes intestate estate and may be distributed at such time or times and in such manner as the Court of Probate for the District of Middletown may order, to the persons entitled to receive it under the provisions of section 4982 of the General Statutes, Revision of 1930.

(2) All income from the trust fund created in paragraph 4 of the will of Mary Donovan in any calendar year hereafter in excess of that expended or which may reasonably be required in the judgment of the trustees other than The Middletown Trust Company, to be expended for the proper care and support of Mary V. Donovan during such calendar year and which may remain after deducting all proper fees, expenses, taxes (if any) and other proper charges and disbursements made in the administration and management of the said trust, constitutes intestate estate and may be distributed by he pro-

bate court aforesaid from time to time to the persons entitled to receive it under the provisions of section 4982 of the General Statutes, Revision of 1930.

(3) The term "income" excludes all capital gains, increase of value and increment of the trust fund as it was at the time the same was delivered to the trustees by the executors and all which has occurred since that time and such as may hereafter take place but includes surplus income which has been invested and any increase in value due to reinvestment and capital appreciation or increment of the same.

(4) The determination of the sum or sums required to be provided for the comfortable support of Mary V. Donovan under paragraph 4 of the will of Mary Donovan, is to be made by the two trustees other than The Middletown Trust Company and may properly include a reasonable reserve represented by a sum in excess of that required for Mary V. Donovan's proper care and comfortable support in any calendar year.

(5) In determining the amount required for the comfortable support of Mary V. Donovan in any calendar year under paragraph 4 of the will, the trustees shall take into account any estate of which Mary V. Donovan may be possessed and such income payable to her in any calendar year derived from sources other than under the provisions of paragraph 4 of the will of Mary Donovan, and in any calendar year in which such estate or income of Mary V. Donovan is sufficient, shall not pay to or expend for the benefit of Mary V. Donovan any of the income or principal of the trust fund; and in any calendar year in which such estate owned by Mary V. Donovan, personally, or income from other sources payable to her, will not suffice to fully provide Mary V. Donovan with comfortable support, shall pay to her or expend for her comfortable support only so much of the interest or principal as may be necessary to provide her therewith, over and above that which her personal estate or income is sufficient to so provide.

(6) In event that the conservator finds that the proper protection of the rights and interests of the estate of Mary V. Donovan shall so require, he should institute action in this court, asking that the agreement of October 30, 1922 (Exhibit B) and that of November 9, 1930, together with those by which the agreement of November 9, 1930 was continued in effect until November 9, 1936, be declared void as to Mary V. Donovan.

(7) The agreement of October 30, 1922 (Exhibit B) is void-able as to Mary V. Donovan.

(8) The agreement of November 9, 1930 and those extend-ing the period of operation of that of November 9, 1930, are voidable as to Mary V. Donovan.

(9) Under the provisions of Mary Donovan's will, Wanda Eugenia Gager (nee Stempel) and Audrey Jane Stempel are not entitled to the income from the trust fund created in para-graph 4 of such will, or any part thereof.

(10) Neither Olive D. Stempel nor Mary V. Donovan have any title or right to the surplus income, as such, under the will of Mary Donovan.

(11) Paragraphs 1, 2 and 3 of the prayers for relief are denied.

The defendants are advised as follows:

(a) The trustees should file in the court of probate an ac-count of all income received by them from the trust fund from the beginning and the disposition made of the same.

(b) The conservator of Mary V. Donovan and the guard-ians of Wanda Eugenia and Audrey Jane Stempel should file accounts of all income received by each of them, respectively, in the administration of their several respective trusts and the dispositions made of all monies which have come into their hands.

(c) If the trustees claim credit for moneys paid from in-come from the trust fund created in paragraph 4 of Mary Donovan's will, to Olive D. Stempel pursuant to the agreement of October 30, 1922 (Exhibit B), or for moneys paid to the guardians of Wanda Eugenia or Audrey Jane Stempel, re-spectively, in performance of the agreement of November 9, 1930, and those thereafter made whereby such agreement of November 9, 1930, was continued in effect until and including November 9, 1936, Mary V. Donovan's conservator should op-pose the allowance of same.

(d) If deemed advisable for the better protection of the rights and interests of Mary V. Donovan, the latter should in-stitute action in the Superior Court against the trustees seeking an accounting from them and demanding that they restore to the trust fund all moneys paid to Olive D. Stempel in perform-

ance of the agreement of October 30, 1922, and to the guardians, respectively, of Wanda Eugenia Stempel (now Gager) and Audrey Jane Stempel, respectively, in performance of the agreement of November 9, 1930, and those by which the agreement of November 9, 1930, was continued in effect to and including November 9, 1936.

(e) The determination of the sum or sums required to be provided for the comfortable support of Mary V. Donovan under paragraph 4 of the will of Mary Donovan, is to be made by the two trustees other than The Middletown Trust Company and may properly include a reasonable reserve represented by a sum in excess of that required for Mary V. Donovan's proper care and comfortable support in any calendar year.

(f) In determining the amount required for the comfortable support of Mary V. Donovan in any calendar year, the trustees shall take into account any estate of which Mary V. Donovan may be possessed and such income payable to her in any calendar year derived from sources other than under the provisions of paragraph 4 of the will of Mary Donovan, and in any calendar year in which such estate or income of Mary V. Donovan is sufficient to provide for her comfortable care and support, shall not pay to or expend for the benefit of Mary V. Donovan any of the income or principal of the trust fund; and in any calendar year in which such estate owned by Mary V. Donovan, personally, or income from other sources payable to her, will not suffice to fully provide Mary V. Donovan with comfortable support, shall pay to her or expend for her comfortable support only so much of the interest or principal as may be necessary to provide her therewith, over and above that which her personal estate or income is sufficient to so provide.