THE UNION AND NEW HAVEN TRUST COMPANY, TRUSTEE, *vs.* S. WAKEMAN SHERWOOD ET AL.

Third Judicial District, New Haven, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued April 9th—decided October 25th, 1929.

"(b) The net income of one of said one-quarter parts shall be paid by the said trustee quarterly to my son, Richard, during his life, except that the trustee may at any and all times and from time to time at its discretion refuse to make any of the quarterly payments above mentioned to my said son, or on his order or assignment, or upon factorizing process, in which case it shall instead

expend said income for his benefit itself. If my said son, Richard, dies before or after me leaving a child or children, the said trustee shall pay to said children as a class quarterly, in equal shares, the said net income during the life of the survivor of my son Richard and my said grandson Thomas and for twenty-one years thereafter, at the end of which period the principal of said one quarter shall belong to such of the children of my said son Richard as are then living, discharged of the trust. If my son Richard dies without leaving children, or if all of his children which survive him die before the expiration of the period above referred to, the principal of said one-quarter part shall be paid to my then living issue, discharged of the trust."

154

*Stanley Daggett,* for the plaintiff.

*J. Dwight Dana,* for the defendants Thomas T. W. Sherwood *et als.*

*Curtiss K. Thompson,* for the defendant S. Wakeman Sherwood.

WHEELER, C. J. We take up first, the question, Did the parties to the indenture of trust, Exhibit A, have the power and capacity to validly enter into this indenture? No doubt arises as to the plaintiff Trust Company's capacity and power to enter into this contract with S. Wakeman Sherwood, or as to Wakeman's competency in years, and in capacity; so far as appears he acted without compulsion and under competent professional advice. Under such circumstances, whether he gave up his legal rights with knowledge, or whether he desired in this way to make provision for his son, so that at his own decease the principal of the trust fund might come to the son unimpaired is without legal significance. Whatever interest in this trust fund he had by way of a vested remainder was his to dispose of at will in his own lifetime, or at his own decease. The answer to question one is concerned with the right of Thomas, the minor beneficiary, or of his guardian, to contract with reference to the minor's interest in the one-quarter part of this trust fund which was given to Richard for life. By Article Eleventh the plaintiff Trust Company was given a one-quarter part of the residue for the benefit of Richard, the son of the testatrix, for life, with power in the trustee to make quarterly payments of its net income to Richard

or to withhold it and itself expend the net income for his benefit. Upon his death leaving children the trustee was to pay to his children quarterly the net income during the life of the survivor of Richard and the testatrix's grandson Thomas, and for twenty-one years thereafter. Presumably the draftsman intended to use "or" for "and" after Richard and before "my grandson." If Richard dies without children or if all of his children which survive him die before the expiration of the prescribed period, the testatrix provides that the one-quarter part shall be paid to "my then living issue, discharged of the trust." Preceding the final disposition of Richard's one quarter none of the provisions of the testamentary gifts exceed the period of life or lives in being and twenty-one years and hence do not offend the rule against perpetuities. The term "issue" in a will is to be construed in its primary, and therefore presumptive meaning, heirs of the body, and includes descendants in every degree, "unless it appears from the context and surrounding circumstances to have been used as one of limitation." *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 66, 112 Atl. 689; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 751, 136 Atl. 588. But when the context or surrounding circumstances show that issue means immediate issue who may be descendants beyond children or grandchildren but not beyond the period which would bring it within the rule against perpetuities, it does not offend that rule. In this case issue cannot mean descendants beyond the period of the rule for at the instant the period terminates the principal of the trust fund vests in the "then living issue." *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33; *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535; *Mitchell* v. *Mitchell,* 73 Conn. 303, 47 Atl. 325. The "then living issue" is the only living son of the testatrix, S. Wakeman Sherwood, the brother

of Richard. *Daskam* v. *Lockwood,* 103 Conn. 54, 63, 130 Atl. 92, 95; *Manning* v. *Manning,* 229 Mass. 527, 529, 118 N. E. 676; *Jackson* v. *Jackson,* 153 Mass. 374, 26 N. E. 1112.

If this provision should be held to be within the rule against perpetuities, under the will the principal of the trust fund would be disposed of by the residuary clause and under that go to the person or persons who would receive the testatrix's husband's personal property by legal distribution; S. Wakeman Sherwood would therefore under the residuary clause take the principal of the trust fund.

Claim was made in behalf of his son Thomas to one half of this fund and the two parties claiming an interest, acting by advice of competent legal counsel, entered into the family agreement, Exhibit A, influenced, as is apparent, by the liability of the fund being dissipated by the father and by the agreement reached, giving the father the income for life and preserving the principal of the fund for the son, making provision for what was deemed the best interests of both father and son. As we have stated, S. Wakeman Sherwood was competent to give his son Thomas his own interest in this trust fund, either with or without consideration, and either his entire interest, or that interest subject to his own life use. The authority of the guardian in this matter is governed by statute. General Statutes, § 5009, provides: "The Court of Probate . . . may authorize . . . guardians . . . to compromise and settle any doubtful or disputed claims or actions. . . ." The compromise of any right which a minor may have under a will involves the consideration of what right, if any, the minor has; the approval of the court to the guardian's compromise will involve a consideration of his right to the fund for

the purpose of determining whether the compromise is one which the minor should enter into. This determination would require a consideration of the power of the Court of Probate to authorize a compromise of this nature, with the ultimate purpose of construing this statute, to ascertain whether the legislature intended to include a right arising in a provision of a will under the "claims or actions" to which this statute refers.

All of the powers of our Courts of Probate come from the statutes. Neither they nor the Superior Court sitting as an appellate court of probate have the power to determine directly and conclusively the construction to be given to wills. *Chamberlain's Appeal,* 70 Conn. 363, 377, 39 Atl. 734. Courts of Probate, however, do "possess certain incidental powers beyond the scope of those expressly confided to them, where such powers become necessary in the discharge of duties imposed upon them" or "are necessary for the adjustment of the equitable rights before the court." *Hall* v. *Meriden Trust & Safe Deposit Co.,* 103 Conn. 226, 230, 130 Atl. 157; *McDonald* v. *Hartford Trust & Safe Deposit Co.,* 104 Conn. 169, 190, 132 Atl. 902. Whether the authorization of this compromise involved a construction of this provision of the will which was incidental to the power of authorizing this compromise, or whether the exercise of such a power would, in fact, be a final adjudication of the minor's interest in this trust fund, are questions of serious moment and necessarily arise in the decision of this matter. Whether the guardian by entering into this agreement has finally compromised all right the minor had to this fund, or whether the agreement was merely a personal obligation of the guardian are also questions necessarily involved.

But whatever the answer to these questions may be, at least it is clear that this minor upon attaining his

majority should then be at liberty under General Statutes, § 5073, to test the right of the guardian to make this compromise. As we construe this provision of the will the compromise agreement was extremely beneficial to the minor; his estate secured by it the remainder interest in this fund to which he was not entitled and in consideration granted the life use of this remainder interest to his father, S. Wakeman Sherwood, which he already possessed, and to which the minor had no legal interest. It is true that he can test the compromise agreement on arriving at his majority, but there is no likelihood of this happening. Nor is there likelihood of the guardian suffering a liability through having entered into the compromise agreement with the minor.

Under these circumstances, we have decided not to answer question one further than we have already done, and to leave the determination of the other questions involved in this question unanswered until such time as the rights of litigants require an answer, and we have had the subjects involved fully argued. Under our construction of the will, S. Wakeman Sherwood was the owner of the principal of this fund prior to his transfer of it and he is also entitled to the income therefrom because of Exhibit A. He has transferred by this agreement the principal of the fund to his son but retained the income therefrom. The sixty-seven shares of the Securities Company stock was a part of this fund. We are asked whether the proceeds ($3438.44) of the sale of the sixty-seven shares of the Securities Company stock are part of the income of the trust fund and payable to S. Wakeman Sherwood, or are a part of the principal of the trust fund and payable upon the death of the life beneficiary, S. Wakeman Sherwood, to Thomas T. W. Sherwood, sole remainderman of the trust fund. The conveyance of

the coal properties of the Railroad Company to the Glen Alden Coal Company in consideration of the company giving the Railroad Company's stockholders the right to subscribe for the Glen Alden stock at $5 per share in the proportion of one share of the Glen Alden stock for one share of the Railroad Company stock and the issuance to the Railroad Company of $60,000,000 of the Glen Alden Coal Company bonds, was in pursuance of a sale by the Railroad Company to the Glen Alden Coal Company. So far as the record discloses both the Glen Alden Coal Company and the Railroad Company were separate corporate entities. The $60,000,000 of bonds in the treasury of the Railroad Company was a part of its surplus. It could sell the bonds and distribute the proceeds to its stockholders as a cash dividend, or it could distribute the bonds to its stockholders pro rata. In either case the dividend would be a cash dividend and be income and go to the life tenant. *Green* v. *Bissell*, 79 Conn. 547, 551, 65 Atl. 1056; *Union & New Haven Trust Co.* v. *Taintor*, 85 Conn. 452, 83 Atl. 697. One and a half million of the bonds matured and were paid to the Railroad Company. Instead of selling the remainder of the bonds or distributing them as a dividend to its stockholders, it chose to cause to be organized a Securities Company and to transfer to it the $48,500,000 of bonds in consideration that the Securities Company issue its stock direct to the stockholders of the Railroad Company in the ratio of one share to every two shares of stock of the Railroad Company. The shares of stock of the Securities Company merely transferred a proportional interest in the bonds. It was another means of distributing to these stockholders their proportional interest in the bonds and gave to them what they would have obtained had the bonds been distributed to them directly. This was clearly a cash divi-

164

dend which "includes all distributions of surplus assets, whether in the form of cash or property, taken from the body of the assets to become the property of the stockholders." *Union & New Haven Trust Co.* v. *Taintor, supra,* at page 455. The claim that this was in the nature of a stock dividend needs no further answer than to point out the controlling fact that the Railroad Company by its transfer to the Securities Company divested itself of its interest in and control over these bonds. Nor do we think the claim in behalf of the guardian that this transaction was a corporate reorganization requires extended treatment. The finding as agreed to by the parties in interest so states, but the facts surrounding the immediate transaction show very clearly that neither in law nor fact, upon this record, can the claim be sustained. Our rule that cash dividends are to be regarded as income admits of no relaxation unless exceptional circumstances exist which would justify a suspension of its operation. Our opinion in *Smith* v. *Dana,* 77 Conn. 543, 60 Atl. 117, conclusively settled the law of this State. The circumstances present do not exhibit the exceptional case which would require the yielding of the rule to their powerful claim of justice. We portray in *Smith* v. *Dana, supra,* 549, the necessity and the advantages of a rule which is certain and the obstacles to be encountered and even the impossibility of administering each case upon exact equity: "The necessity for a rule which should serve as a guide and protection to trustees in the performance of their duties is apparent. The advantages of one which would make ceaseless litigation, with its attendant harassment and expense, unnecessary, are no less so. The uncertainty and difficulties attending any attempt at arriving at the true equities between parties respectively asserting income and capital interests, in the proceeds of a dividend

declared, are not so readily appreciated. It requires, however, but slight reflection to discover the magnitude of the obstacles to be surmounted and the impossibility which must oftentimes be met, whereby the judicial search for precise equities necessarily becomes resolved into a speculation and a guess. There exists the ever-present difficulty of tracing financial results to their source, and of distinguishing between what of increased assets rightfully represents profits, and what represents increase of value appropriate to capital. Above all, there enters into most situations to render courts powerless to arrive at any certain results, a controlling factor arising from the discretionary power which directors rightfully exercise to determine at all times, within reasonable limits, the destiny of profits and of accumulated profits represented by surplus." See also *Union & New Haven Trust Co.* v. *Taintor,* 85 Conn. 452, 83 Atl. 697; *Stamford Trust Co.* v. *Yale & Towne Mfg. Co.,* 83 Conn. 43, 75 Atl. 90; *Bishop* v. *Bishop,* 81 Conn. 509, 527, 71 Atl. 583; *Green* v. *Bissell,* 79 Conn. 547, 551, 65 Atl. 1056; notes, 24 A. L. R. pp. 29, 53, 93.

We answer question (1) that the indenture of July 7th, 1919 (Exhibit A), is valid so far as it concerns S. Wakeman Sherwood and that he had power and capacity to enter into Exhibit A. As to the other parties to the indenture we make no answer other than that contained in this opinion; (2 and 3) that the sixty-seven shares of Securities Company stock represent income of the trust fund and the proceeds thereof belong to and should be paid to the defendant S. Wakeman Sherwood as part of the income of the trust fund to which he is entitled.

In this opinion MALTBIE, HINMAN and BANKS, Js., concurred; HAINES, J., dissented as to the conclusions in answers two and three.