MARJORIE A. POTTER v. ROBERT H. ALCORN

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, JS.

Argued May 5—decided June 30, 1953

*Philo C. Calhoun,* with whom was *Philip H. Smith,* for the appellant (plaintiff).

*Robert H. Alcorn,* pro se, the appellee (defendant).

INGLIS, J.  The plaintiff took an appeal from an order of the Probate Court for the district of New Haven allowing the defendant a fee of $500 for services rendered as guardian ad litem for David Henderson, a minor.  The Superior Court sustained the defendant's demurrer to the reasons of appeal and, from the judgment rendered upon the plaintiff's refusal to plead over, the plaintiff has appealed to this court.

For the purpose of testing the demurrer, these facts stand admitted:  The plaintiff is the mother, and Holcomb H. Henderson, her former husband, the father, of David Henderson, a minor.  On June 24, 1949, the plaintiff filed with the Probate Court for the district of New Haven an application wherein she asked for the removal of the father as guardian of the minor's person and the appointment of herself as guardian of his person and estate.  On June 28, 1949, the Probate Court appointed the defendant as guardian ad litem of the minor.  The appointment was made without the plaintiff's consent and upon the request of persons unknown to her.  Neither then nor thereafter did the minor have an estate, nor has

he ever been the owner of any property rights. On June 4, 1952, the Probate Court entered its order allowing the defendant a fee of $500 for his services as guardian ad litem in the proceeding.

The sustaining of the demurrer did not decide the question whether the plaintiff is personally liable for the payment of the amount of the allowance. It is true that the ground stated in the demurrer was that "on the facts stated the appellant is liable . . . for the fees of the appellee." The trial court, however, stating in its memorandum that counsel upon argument had agreed that the demurrer should be considered as addressed to the reasons of appeal generally, expressly avoided the question of the plaintiff's personal liability and decided the demurrer on other grounds. See *Anselmo* v. *Cox,* 135 Conn. 78, 79, 60 A.2d 767. It is clear, moreover, that the reasons of appeal do not put the question of liability in issue. The allegation therein that the order appealed from implies a finding that the plaintiff is liable for the fee is a mere allegation of a conclusion of law which is not justified by the order itself. The order is simply "that a fee of $500.00 be and the same is hereby granted for services as guardian ad litem." This does no more than determine the proper amount of the compensation of the guardian ad litem. It does not direct that the compensation shall be paid by the plaintiff. Consequently, both because the question of the plaintiff's liability for the defendant's fee was not passed upon by the trial court and because it is not really involved in the appeal from the probate order, it is not before us on this appeal. The decision of that question will have to be left to other litigation. The questions before us, at the present time, are only two in number. They are whether the Probate Court has power to appoint a guardian ad litem in a case

such as this and, if it has, whether it has power to make an allowance to him for his services.

It is, of course, elementary that courts of probate are strictly statutory tribunals. *Palmer* v. *Reeves,* 120 Conn. 405, 408, 182 A. 138. As such, they have only such powers as are either expressly or impliedly conferred upon them by statute. *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 161, 147 A. 562; *Lewis* v. *Klingberg,* 100 Conn. 201, 204, 123 A. 4. Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute. 1 Locke & Kohn, Conn. Probate Practice, p. 76. That is true in this case. The statute which endows courts of probate with power both to appoint guardians ad litem and to make allowances for their compensation is § 6861 of the General Statutes (as amended, Cum. Sup. 1951, § 1244b). The relevant portions are set forth in the footnote.[1]

---

[1] "Sec. 6861. APPOINTMENT OF GUARDIAN AD LITEM. When, in any proceeding before a court of probate, . . . it shall appear that one or more persons . . . have or may have an interest in such proceeding, and that one or more of such persons are minors, . . . the court may appoint a guardian ad litem for any of such minors. . . . Any order or decree passed or action taken in any such proceeding shall affect all such minors . . . for whom such guardian ad litem has been appointed, in the same manner as if they had been of full age and present in court after legal notice at the time of such action or the passing of such order or decree. Any appointment of a guardian ad litem may be made with or without notice, and, if it shall appear to such court that it is for the best interests of a minor having a parent or guardian to have as guardian ad litem some person other than such parent or guardian, such court may appoint some disinterested person to be such guardian ad litem. When such appointment shall be made in connection with the settlement of the estate of a deceased person, or the settlement of the account of a trustee or other fiduciary, the person so appointed shall be authorized to represent such minor . . . in all proceedings for the settlement of such estate or such account and subsequent accounts of such trustee or other fiduciary, or until his appointment be terminated by death, resignation or removal. . . . Any

The principal contention of the plaintiff is that the statute is not intended to apply to proceedings for the removal of a guardian of the person of a minor. So far as the power to appoint a guardian ad litem is concerned, the statute on its very face clearly refutes this contention. Its first sentence authorizes the appointment "in any proceeding before a court of probate." So far the provision is all inclusive. The only limitation on the words quoted is that it must appear that one or more persons who are minors "have or may have an interest in such proceeding." It can hardly be said that a child has no interest in the question who is to be the guardian of his person. Though not pecuniary, it is, nevertheless, an interest which is recognized in probate law. See *Spencer's Appeal,* 122 Conn. 327, 332, 188 A. 881. So real is his interest that, when it comes to the choice of a guardian who is not a natural parent, the law gives a minor more than fourteen years of age the right to choose the guardian. General Statutes § 6853; *Ferrie* v. *Trentini,* 111 Conn. 243, 246, 149 A. 664; *Adams' Appeal,* 38 Conn. 304, 306. Since a minor does have an interest in who is to be the guardian of his person, a proceeding for the removal of such a guardian is one within the statute.

One of the only two arguments to the contrary is that, since § 6850 of the General Statutes, empowering the Probate Court to remove a guardian, permits it to request an investigation by the commissioner of welfare, any necessity for the appointment of a guardian ad litem is obviated. Inasmuch as the provision is not mandatory, but merely permissive, the statute does not preclude the appointment of a

guardian ad litem appointed under the provisions of this section may be allowed reasonable compensation by the court appointing him and the same shall be paid as a part of the expenses of administration."

guardian ad litem when, in the courts' judgment, such a course will better meet the situation.

The other argument is that, in view of the fact that the last sentence of § 6861 provides that the compensation of the guardian ad litem "shall be paid as a part of the expenses of administration," the whole section is inapplicable to any proceeding in which no assets are involved out of which costs of administration can be paid. This contention ignores the fact that it is conceivable that in many cases guardians ad litem may be found who are willing to serve without compensation. The fact that it may be difficult to provide compensation for a guardian ad litem might be a factor to be taken into consideration by the court in determining whether it is advisable to make an appointment. By itself, however, it cannot be determinative of the question whether the court has power to appoint. If the court has jurisdiction to appoint in any proceeding in which a minor's interest is involved, it must have jurisdiction to appoint in all such proceedings.

The history of § 6861 indicates that, in enacting the provision that the compensation of a guardian ad litem might be paid as part of the expenses of administration, the General Assembly did not intend to restrict the appointment of such a guardian to cases in which assets are available. The prototype of the statute was enacted in 1885 as a part of the codification of laws relating to probate. Section 80 of chapter 110 of the Public Acts of 1885 provided: "When, in any proceeding before a court of probate, notice is required to be given to a person who is a minor, and such minor shall have no parent or guardian, the court of probate shall appoint a guardian *ad litem* for such minor before passing any order or decree affecting his interest." Section 73 of the same chap-

ter authorized courts of probate to appoint or approve as guardian of a minor some person other than the parent or natural guardian if the latter was found to be unfit. It was also provided in this chapter (§§ 69, 70) that a child of fourteen years of age or over, if he had no parent, had the right to choose his guardian and that the Court of Probate, before making an appointment, should "notify him to appear" to make his choice. Because of this requirement that the minor be notified to appear, the matter of the appointment of a guardian in lieu of a parent was brought within the class of proceedings as defined in § 80 in which the Probate Court was authorized to appoint a guardian ad litem. In its inception, therefore, the statute clearly did not restrict the power of the courts of probate to appoint guardians ad litem to proceedings in which the minor's interest in property was involved.

No material change was made in the statute under consideration until 1905. It will be remembered that the act of 1885 permitted the appointment of a guardian ad litem only in cases in which the minor had no parent. In 1905 the General Assembly extended the authority to cases where the minor does have a parent but "where it shall appear to said court that it is for the best interests of a minor . . . to have, as guardian ad litem in said proceeding, some person other than said parent." Public Acts 1905, c. 139. In 1919 the following sentence was included in the act: "When such appointment is made in connection with the settlement of the estate of a deceased person, the person so appointed [as guardian ad litem] shall be authorized to represent such minor in all proceedings for the settlement of such estate or until his appointment be terminated by death, resignation or removal." Public Acts 1919, c. 47. This addition did

not limit appointments of guardians ad litem to proceedings involving a minor's interest in an estate. On the contrary, it clearly recognized that appointments might be made in cases other than those in which an estate was involved.

It was not until 1921 (Public Acts 1921, c. 125) that the provision was added upon which reliance is now based to support the contention that courts of probate may appoint guardians ad litem only in proceedings in which a minor's interest in property is involved. This is the sentence which reads: "Any guardian ad litem appointed under the provisions of this act may be allowed reasonable compensation by the court appointing him and the same shall be paid as a part of the expenses of administration." The rest of the statute remained essentially as it had been enacted in 1919, and the 1919 act, so far as it has a bearing on the question now before us, was essentially the same as the original act of 1885. The sole purpose of the addition made in 1921 was obviously to remove all doubt as to the power of the Probate Court to allow compensation to a guardian ad litem and to authorize the payment thereof, not necessarily out of any estate which might be in process of settlement, but rather "as a part of the expenses of administration." Since 1885 it had been the policy of the law as expressed in the statute to permit courts of probate to appoint guardians ad litem in all cases in which the interest of any minor was so involved that he was entitled to notice of the proceedings. It is inconceivable that the General Assembly intended, by adding the sentence providing for compensation for guardians ad litem, to change that long-established policy. No modification of the statute since 1921 is of controlling significance. We conclude that under § 6861 a Court of Probate had power to

appoint a guardian ad litem in any proceeding in which a minor's interest would be affected, whether that interest was pecuniary or not. In particular, it had the power to make such an appointment in a proceeding for the removal of the guardian of the person of a minor.

The second question before us is whether a Court of Probate, having the power to appoint a guardian ad litem, also had the power to make an allowance to him in compensation for his services. It would seem that, even without a special legislative enactment, the power to make such an allowance would be implied in the grant of the power to make the appointment. The power is expressly granted, however, by the last sentence of § 6861. The only question is whether the power is conditioned by the last part of the sentence which provides that the allowance "shall be paid as a part of the expenses of administration." Does this mean that the power to make an allowance may be exercised only when there are assets in an estate available for that purpose? Clearly it does not. The exercise of powers granted to a Probate Court by statute can never be contingent solely on the fact that there are assets in the control of the court out of which the expenses of administration can be paid. If it were, a Court of Probate could seldom take jurisdiction of proceedings for the removal or appointment of guardians of the person, or for adoption, or for the commitment of the mentally ill. In all of those proceedings there are expenses of administration which ordinarily must be paid from some source other than from assets which are in the control of the court. Yet it could hardly be claimed that the lack of assets deprived the Probate Court of jurisdiction to enter its orders and decree in such matters.

The making of an allowance in such a case as this is not an order which directs anyone to pay the amount allowed. It is nothing more than a determination of what is reasonable compensation for the services rendered. In most of the matters which come before a Probate Court there are assets against which all expenses of administration may be charged. The intendment of the last sentence of § 6861 is, therefore, that the Probate Court has power to fix the amount of the compensation to which a guardian ad litem is entitled and that, the amount having been determined, authority is given to include it as a part of the expenses of administration. The direction that the allowance is to be paid as a part of administration expense does not preclude the Probate Court from exercising the power expressly conferred upon it to make the allowance.

There is no error.

In this opinion BROWN, C. J., BALDWIN and CORNELL, Js., concurred.

O'SULLIVAN, J. (dissenting). As pointed out above, probate courts are statutory tribunals, capable of exercising only those powers bestowed upon them by the General Assembly. Of the two statutes authorizing them to appoint guardians ad litem, one has no pertinence to the case at bar. General Statutes § 7022. The other is § 6861 (as amended, Cum. Sup. 1951, § 1244b), a part of which is set forth in a footnote to the majority opinion. However, since that footnote omits certain language to which I shall subsequently refer, the first sentence of the section is recited below in full.[1]

---

[1] "Sec. 6861. APPOINTMENT OF GUARDIAN AD LITEM. When, in any proceeding before a court of probate or the superior court, whether acting upon an appeal from probate or otherwise, it shall appear

Section 6861 was the statute upon which the Probate Court relied as the source of its power in appointing the defendant as guardian ad litem for the minor, David Henderson. It is true that § 6861 provides at the very beginning that "in any proceeding" before it, the Court of Probate may appoint a guardian ad litem for a minor, if it appears that the minor has an interest "in such proceeding." On their face, these provisions might seem ample to support the court's appointment of the defendant, since the plaintiff's application for the removal of Henderson as the natural guardian of his son was the institution of a proceeding before the court, and it is evident that, speaking in the broadest sense, the son had an interest in that proceeding. Such a point of view, however, is superficial, it seems to me, since it is reached without having due regard for the legislative intent expressed in the entire statute. That intent is to be found, not in an isolated sentence, as the majority insist upon, but rather from a consideration of the statute as a whole. *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 560, 53 A.2d 655; *Lake Garda Co.* v. *LeWitt,* 126 Conn. 588, 592, 13 A.2d 510; *Kelly* v. *Dewey,* 111 Conn. 281, 286, 149 A. 840. Indeed, all of the provisions must be read and construed together. *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A.2d 592. This is necessary in order that every part of the statute be made operative and harmonious with every other

---

that one or more persons as individuals, or as members of a designated class or otherwise, have or may have an interest in such proceeding, and that one or more of such persons are minors, incompetent persons or persons undetermined or unborn at the time of such proceeding, the court may appoint a guardian ad litem for any of such minors, incompetent, undetermined or unborn persons, or may appoint one guardian ad litem for two or more of such minors, incompetent, undetermined or unborn persons. . . ."

part. *State* v. *Dorau,* 124 Conn. 160, 168, 198 A. 573; *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 193, 167 A. 709.

As just indicated, the majority rest their opinion upon the first sentence of the statute. If the statute consisted of that one sentence and nothing more, the homage paid to it by my colleagues might be justified and their position might be warranted. Such, however, is not the situation. There are five other sentences, the last of which, when properly analyzed and considered in connection with the others, provides the key to the legislative intent. That sentence recites that "[a]ny guardian ad litem appointed under the provisions of this section may be allowed reasonable compensation by the court appointing him and the same shall be paid as a part of the expenses of administration." This may be broken down into two propositions: first, the Court of Probate may allow compensation to every guardian ad litem appointed by it and, secondly, the compensation allowed by the court is to be paid as an expense of administration. Since the authority of the Probate Court to appoint a guardian ad litem is derived solely from § 6861, and since that section empowers the court to allow compensation for the services of such a guardian, and since that allowance, when made, is to be paid as an expense of administration, it necessarily follows that authority is lacking in the Probate Court to appoint a guardian ad litem in any proceeding in which there cannot possibly be any expenses of administration. The fact that an estate, through lack of funds, may not be able to pay the compensation ordered by the Probate Court is of no moment. In instances of that nature, the compensation ordered for the guardian ad litem would still be an expense of administration, although an unliquidated one owing to the impe-

cuniosity of the estate. Parenthetically, it might be observed that in situations where there are no assets in the estate to meet the payment of a guardian's compensation, the court should not go through the useless formality of passing an order for compensation which the probate judge knows cannot be honored.

The plaintiff's application to remove her former husband as guardian of the person of their son, David, was brought under § 6850 of the General Statutes. That section is devoted exclusively to the subject matter of guardians of the person of a minor. The filing of the plaintiff's application was not a proceeding in which expenses of administration were incurrable, since such expenses are those arising in the management of an estate. See 2 Locke & Kohn, Conn. Probate Practice, §§ 579, 581. It follows that the Probate Court had no authority to appoint the defendant as guardian ad litem or to order an allowance for his services.

The foregoing permits a construction which will give meaning to every provision of § 6861. As opposed to this, the majority make impossible the harmonizing of the last sentence with the rest of the statute. Indeed, they attribute no meaning at all to the words "expenses of administration," nor can they logically do so in the light of their interpretation of the legislative intent. Nothing in any enactment of the General Assembly should be treated as superfluous, void or insignificant, unless there are impelling reasons, not here discernible, why this principle cannot be followed. *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732.

The conclusion of my colleagues, I fear, will lead to confusion. Since they hold that the defendant was legally appointed, it is inevitable that they must

uphold the order of the Probate Court that he be paid $500 for his services. The confusion will arise when one inquires from whom or from what source is payment to be sought. Certainly, the plaintiff does not qualify as the debtor because she has nothing to do with any expenses of administration, and the statute does not make her liable for the compensation as one of the taxable costs or fees in the proceeding. The same situation applies to the respondent Henderson. And it would be the height of naivete to assume that the judge of probate is to pay the $500 out of his own pocket.

The position which I have taken is fortified, I believe, by a provision in the first sentence which the majority failed to incorporate in their footnote. This provision permits the Superior Court, "whether acting upon an appeal from probate or otherwise," to appoint guardians ad litem and to order reasonable compensation for them which, here again, "shall be paid as a part of the expenses of administration." It strikes me that the legislature intended that the Superior Court might exercise this statutory grant of power in those instances where, as the language indicates, minors, incompetents, the undetermined or the unborn might have an interest in an estate. If, on the other hand, the majority are right in their interpretation of § 6861, the Superior Court may appoint and order compensation for a guardian ad litem of a minor whose custody is sought in a divorce action. It will be interesting to learn what expenses of administration there are in a divorce action.

Without pressing the matter further, I am satisfied that the legislative purpose in enacting § 6861 was to permit the appointment of guardians ad litem only in those situations where the minor may have an interest in an estate which is involved in the proceed-

ing. For this reason, I disagree with the majority opinion.