[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On or about July 30, 1988, Peter DiNardo became indebted to the Bank of Boston Connecticut in the principal amount of $500,000 pursuant to an unsecured revolving credit note dated June 30, 1988 (Appellee exhibit A). Peter DiNardo died on September 1, 1989, owing the entire principal balance in the amount of $500,000.
On or about October 2, 1989, an Application for Administrator of Probate of Will of the Estate of Peter DiNardo was filed and on October 3, 1989, a Decree Granting Administration or Probate of Will was granted naming Josephine C. DiNardo, Nancy J. DiNardo, Leonard A. DiNardo and Salvatore K. DiNardo as co-executors. (Appellee's exhibits B C.) It is believed that the co-executors were the wife and children of the deceased.
On or about November 27, 1989, Bank of Boston Connecticut filed a claim against the Estate of Peter DiNardo, based on four notes, one of which was the $500,000 Revolving Credit Note. (See appellee's exhibit D.) On or about December 20, 1991, the fiduciaries of said estate filed a return of claims against the estate in the amount of $7,059,892.76, which included the $500,000 Revolving Credit Note (appellee's exhibit E), which specific claim was accepted by the estate. On or about September 23, 1994, Bank of Boston Connecticut assigned all of its rights, title and interest in the $500,000 note and claim to WHBB Real Estate Limited Partnership ("WHBB") pursuant to, inter alia, Note Indorsement, an Assignment of Collateral Property and an Assignment of Participant's Interest, all dated September 23, 1994.
On or about April 19, 1995, WHBB filed an application with the Trumbull Probate Court seeking payment to said WHBB of the $500,000 note plus interest or in the alternative for Order of Liquidation of the Estate's Assets to pay the claim. The estate promptly filed an objection to WHBB's application. On May 25, 1995, at a hearing before the Probate Court, the court ordered WHBB to produce and file documentation establishing its status as a successor in interest to the Bank of Boston Connecticut on such $500,000 note. On or about June 5, 1995, WHBB filed documents with the Probate Court entitled "WHBB's" Filing of Assignment CT Page 8920 Documents to Include Note Indorsement, an Assignment of Collateral Property and an Assignment of Participant's Interest", all dated September 23, 1994 (see appellee's exhibit F). It is to be noted that the Note Indorsement and Assignment of Collateral Property were by Janet M. LaCasse, as Attorney in Fact for Bank of Boston Connecticut, while the Assignment of Participants interest was signed by Janet M. LaCasse as Attorney in Fact for BancBoston Real Estate Capital Corporation. Each of the three documents refer to the same $500,000 revolving credit note dated June 30, 1988, executed by Peter DiNardo in favor of Bank of Boston Connecticut. It would appear from the documents that the Assignment of Collateral Security assigned the bank's interest in and to the loan evidenced by the revolving credit note while the Assignment of Participant's Interest assigned the Seller's interest in any deed of trust or mortgage securing the promissory note evidencing the $500,000 revolving credit note. There was also some limited testimony from Geoffrey C. Wood that BancBoston Real Estate Capital Corporation was some form of subsidiary of Bank of Boston Connecticut. There is no evidence of the actual existence of a deed of trust or mortgage.
On or about March 1, 1996, WHBB filed a Renewed Application for Order of Payment of Claim or in the alternative for Order of Liquidation of the Estate's Assets, which the estate again promptly objected to. On or about March 12, 1996, the estate also filed a Motion to Produce Allonge by WHBB Real Estate Limited Partnership, which, after a hearing, was denied by the Probate Court. (See appellants' exhibit 2.) The purported purpose of said motion was to require WHBB to produce the ALLONGE which the estate claims was missing from the documents filed by WHBB on June 5, 1995. That motion was denied. The estate has appealed that denial of the Motion to Produce Allonge.
On July 24, 1996, at a hearing in the Probate Court, the court granted WHBB's Motion to Substitute Party Claimant based on its merger with WHTR Real Estate Limited Partnership and designating WHTR as a claimant against the estate. (See appellee's exhibits G and H.) On August 29, 1996, the Honorable John C. Chiota, Judge of the Trumbull Probate Court issued an order that the Estate of Peter DiNardo make payment of WHTR's claim in full ordering that the estate be given one year to liquidate sufficient assets to pay said claim. In its decree (appellant's exhibit 1) the court observed that it had been seven years since the decedent's death and the estate had failed to take any steps to liquidate the assets. This court observes that CT Page 8921 it has now been almost nine years and counting and even if this appeal is denied, the estate has an additional year to abide by the court's order.
On September 6, 1996, the estate took an appeal from that order and on March 17, 1997, the Superior Court consolidated the appeals.
The only witness in the case, Mr. Wood, was called on behalf of WHTR and he testified that he was a Vice President of ARCON Group, which services the loans owned by WHTR and its predecessor WHBB. He identified all the documents offered by WHTR as being in his company file and that since February, 1998, this loan was his personal case. On cross-examination, he admitted that neither WHBB nor WHTR had ever filed its own independent claim in the Trumbull Probate Court, and he indicated that he believed that both WHBB and WHTR were licensed to do business in Connecticut, but he had no records to prove it with him.
The parties to these consolidated appeals have filed lengthy briefs in support of their positions. This court will not regurgitate all of the legal arguments in its decision. The appellee WHTR Real Estate Limited Partnership has described the appellant's legal arguments generally in terms such as "fatally and legally flawed", "misplaced and contrary to law", factually and legally flawed", "disingenuous", and "replete with half quoted statutes, specifically omitting certain provisions which are directly applicable to this case." This court is generally in agreement with this characterization.
This court will entertain the appellant's first three This court will entertain the appellant's first three arguments together and will begin by listing them just as they are phrased in its brief.
"I WHTR is not entitled to any payment from the Estate of Peter DiNardo for the reason that WHTR failed to comply with the statutory claims procedure set forth in Connecticut General Statutes § 45a-353 et seq.
II WHTR is precluded from enforcing the subject note against the Estate of Peter DiNardo due to the failure of BancBoston Real Estate Capital Corporation to make any claim against the
III WHTR failed to establish the complete chain of title of the CT Page 8922 note from the Bank of Boston Connecticut to WHTR thereby failing to establish its legal standing to pursue payment pursuant to the note and depriving this court of subject matter jurisdiction."
The exhibits offered by the appellee clearly demonstrate that the decedent, Peter DiNardo, when he died in 1989, was indebted to the Bank of Boston Connecticut ("BOBC") in the amount of $500,000 plus interest pursuant to an unsecured Revolving Loan Note dated June 30, 1988 (appellee's exhibit A). A claim was duly filed by BOBC on or about November 27, 1989, and the claim was allowed in full by the Estate (appellee's exhibit E). No payment has ever been made on the note.
On or about September 23, 1994, BOBC duly assigned all of its rights to the note and claim to WHBB Real Estate Limited Partnership ("WHBB") pursuant to an Indorsement, an Assignment of Collateral Property and an Assignment of Participant's Interest, all dated September 23, 1994 (appellee's exhibit F). On or about September 22, 1995, WHBB merged with and become one with WHTR Real Estate Limited Partnership ("WHTR"). (See appellee's exhibit G.)
The court finds the assignment documents unequivocally assigned all of BOBC's interest in the Note and Claim to WHBB and thereto WHTR. The claim in this case in the amount of $500,000, which was allowed by the Estate, was an assignable chose in action. Hartford Accident Indemnity Co. v. Doyle (J.D. of Fairfield at Bridgeport August 4, 1992, Melville, J.). That assignment transferred to the assignee all of the assignor's interest in the note and claim. Mall v. LaBow, 33 Conn. App. 359,362 (1993).
There is no merit to the claim that somehow after the assignments that WHBB or WHTR were required to file new claims. If they had, they more than likely would have been met by objection from the estate that they were not timely. Once the estate was made aware of the original claim and had an opportunity to assess it and eventually approve it, that is all the statutes require. The estate presents no authority for the proposition that a "new" claim need be filed.
For the same reasons and more, there was no requirement that BancBoston Real Estate Capital Corporation ("BBREC") make a claim against the estate. The existence of that entity in no way affects CT Page 8923 the original rights of BOBC, the payee of the note and its successor's in interest. What little evidence that was offered on this subject was that BBREC was some affiliate or subsidiary of BOBC and its Assignment of Participant's Interest to WHBB involved the inner workings of BOBC and was done in an effort to make sure WHBB got any and all of the interest of BOBC in the note and claim. It cannot in any way be used to water down the rights of BOBC, which it assigned to WHBB.
The estate's next arguments concerning proper chain of title is equally flawed. BBREC was obviously an entity associated with BOBC to the extent that it had any interest in the note and claim it assigned to WHBB to make sure WHBB got all right, title and interest of BOBC. To say that that somehow devalues WHBB's position makes no sense. All the evidence in the case points uncontrovertedly to the fact that WHTR is the valid current holder of the note and claim.
As to the appellant's fourth argument, some factual background is necessary. On April 19, 1995, WHBB filed an application with the Probate Court seeking payments of its claim or an order to liquidate estate assets to pay the claim. The estate objected and the court ordered WHBB to produce the documentation necessary to support its claims as a successor to Bank of Boston Connecticut. WHBB complied and those documents have been produced in this case. Thereafter on March 1, 1996, WHBB again filed for payments in the Probate Court and on March 12, 1996, the estate filed a Motion to Produce Allonge by WHBB, which the court denied after a hearing. The estate has appealed that decision.
The appellant's basic position is that in order for WHTR to pursue its claim here, the original note had to be endorsed to it and that the endorsement here was not effectual because it was not attached to the actual note at the time it was executed by Ms. LaCasse, but was intended to be attached later. The estate's second argument is that the note endorsement was not made on the note itself, which it claims is a requirement for an allonge where there is adequate space on the note for it.
Section 42a-3-204 provides in pertinent part:
 "(a) Endorsement means a signature, other than that of the signor as maker, drawer or acceptor, that alone or accompanied by other words is made on an CT Page 8924 instrument for the purpose of (i) negotiating the instrument. . . . For the purposes of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument."
That final sentence of the statute, that was conveniently not included within the appellant's brief when citing § 42a-3-204, expressly permits an endorsement on a separate piece of paper and treats such an endorsement as part of the negotiable instrument.
Additionally, the commentary to Connecticut General Statutes § 42a-3-203 clarifies that a separate piece of paper affixed to the note constitutes a valid allonge regardless of whether there is sufficient space on the underlying note for an endorsement.
 "The last sentence of subsection (a) is based on subsection (2) of former sec. 3-202. An indorsement on an allonge is valid even though there is sufficient space on the instrument for an endorsement." Connecticut General Statutes § 42a-3-204, Uniform Commercial Code, Comm. Section 1 (1994).
By express Connecticut law there is no requirement that an allonge to be valid must be made on the same note instrument.
As to the estate's argument that the allonge is invalid because it was not attached to the note at the time it was executed again has no basis in law or in fact. (See appellee's exhibit A.) This document is a negotiable instrument and the note indorsement is a valid allonge and consistent with Connecticut law. The estate's position is purely speculative and the estate has offered no evidence to support its claim that the indorsement was not attached to the note when it was executed. Even if there was not an immediate attachment, there is no Connecticut law to support the estate's position that the indorsement is therefore invalid or void. In fact, the only fair implication from a reading of Connecticut General Statutes § 42a-3-204 is that the indorsement is valid if it is signed and attached to the note as was already done here.
The estate's final claim that the probate court lacked authority to order payment of a specified claim and to direct the executor to liquidate assets to do so is also without merit. This CT Page 8925 court will adopt verbatim the language in the appellee's brief (pages 24-27) because it simply cannot be said any better.
"Connecticut law recognizes that Courts of Probate possess broad powers to effect the equitable rights of parties before it. Probate Courts 'possess certain incidental powers beyond the scope of those expressly confided to them, where such powers become necessary in the discharge of duties imposed upon them or are necessary for the adjustment of the equitable rights before the court.' Union and New Haven Trust Co. v. Sherwood,110 Conn. 150, 147 A. 562 (1929) (citations omitted). See also Conn. Gen. Stat. § 45a-98 ('Courts of probate in their respective districts shall have the power to . . . make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state." Conn. Gen. Stat. §45a-98).
"One of the fiduciary duties owed by an executor or administrator to creditors of an estate is the duty to pay the debts of the estate in a timely and efficient manner. See Hall v.Meriden Trust Safe Deposit Co., 103 Conn. 226, 233, 130 A. 157,161 (1925) ('[O]ne of the primary obligations resting upon an executor or administrator is to effect as speedy a settlement of the estate as is reasonably possible.') In the event that an executor fails to pay the debts of the estate in a timely and efficient manner, it becomes the obligation of the Probate Court to enforce the fiduciary's obligations and compel performance.Hall v. Meriden Trust Safe Deposit Co., 103 Conn. 226, 231,130 A. 157, 160 (1925). See also Cooper Polayes, 19 Conn. Sup. 353,113 A.2d 599, 600 (1955); Conn. Gen. Stat. § 45a-365.
 One of the chief duties of an executor or administrator is to pay such claims upon the estate as upon examination he considers to be valid charges. (Citations omitted.) The court of probate has a supervisory power over, and can take appropriate steps to compel, the performance of that duty.
Hall v. Meriden Trust Safe Deposit Co., 103 Conn. 226, 231,130 A. 157, 160 (1925) (emphasis added).
"The Inventory and Accountings filed by the Fiduciaries with the Probate Court indicate that the Estate's assets may not be liquid, but rather, that the bulk of the Estate's assets may consist of real property, partnership interests, personal CT Page 8926 property, stocks and loans receivable. To the extent that the Fiduciaries are unable to satisfy WHTR's Claim on the income generated by non-cash assets, it becomes the executor's obligation to liquidate the estate's assets to the extent of the accepted claims, and it becomes the obligation of the Probate Court to compel such liquidation. See Beattie v. Hewitt,114 Conn. 689, 159 A. 890, 891-92 ('the administrator had no adequate funds with which to pay the claims in the absence of the sale; apparently it will be necessary to pay them at some time out of the property of the estate . . . the trial court was amply justified in concluding that reasonable cause existed for the sale of real estate of the estate.'). See also Offredi v. Huhla,135 Conn. 20, 60 A.2d 779 ('The court of probate may, in its discretion, order sale of any of the real estate if conditions render it necessary or advantageous.')
"In this case, the Fiduciaries have disclosed that the Estate currently possess approximately $16,000,000.00 in assets. To the extent the Estate is unable to satisfy WHTR's Claim due to the fact that the Estate lacks sufficient liquid assets, this Court should enter an order requiring the Fiduciaries to liquidate the Estate's assets to the extent needed to satisfy WHTR's allowed Claim."
The evidence before the court demonstrates that the estate is indebted to WHTR for the entire principal amount of the Note, $500,000, plus interest and counsel fees.
The Trumbull Probate Court's decision provided that the estate is liable to WHTR for interest on the claim. Geoffrey Wood testified at trial that the interest on said principal obligation through June 9, 1998 was $283,968.75. He further testified that WHTR has incurred legal fees in collecting this obligation in the amount of $60,000, for which WHTR is entitled to remuneration per the terms of the Note.
Accordingly, this court enters judgment denying the appeal and affirming the decision of the Trumbull Probate Court and orders the estate to pay to WHTR the sum of $843,968.75 within one year of the date herewith and further orders the estate to liquidate assets to the extent necessary to pay WHTR's claim.
It is so ordered.
GORMLEY, J. CT Page 8927